UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2019-C17, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2019-C17, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019,<br><br>                                      Plaintiff,<br><br>          v.<br><br>36th STREET PROPERTY INC.; HR 442 CORP.; AE SOOK CHOI; JIN SUP AN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEWBANK; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                                      Defendants. | Civil Action File No. 22-cv-00302-LGS |

## DECLARATION OF JAVIER CALLEJAS IN SUPPORT OF PLAINTIFF'S APPLICATION FOR THE IMMEDIATE APPOINTMENT OF A RECEIVER

Pursuant to 28 U.S.C. § 1746, I, JAIVER CALLEJAS, declare under penalty of perjury as follows:

1. My name is Javier Callejas. I am over 21 years of age and am competent to give testimony.

2. The Plaintiff in this action is Wilmington Trust, National Association, As Trustee For The Benefit of the Registered Holders of UBS Commercial Mortgage Trust 2019-C17, Commercial Mortgage Pass-Through Certificates Series 2019-C17 ("Plaintiff"), acting by and

1

through its special servicer, Rialto Capital Advisors, LLC ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019 (the "PSA").

3. I am an Asset Manager of Special Servicer. In that capacity, I am responsible for recovering the debt defendants 36th Street Property Inc. ("Owner Borrower"), and HR 442 Corp. ("Operator Borrower" and, together with Owner Borrower, "Borrowers") owe Plaintiff pursuant to the loan documents that are the subject of this action. The facts herein are based upon my personal knowledge and my review of the business records of Plaintiff regarding Borrowers. In connection with performing its duties as Special Servicer for Plaintiff, the Special Servicer creates, receives, and maintains records, including the exhibits attached to the complaint and/or this declaration, in the regular course of the Special Servicer's business activities. Based on my review of and familiarity with Plaintiff's records, maintained by the Special Servicer, all the exhibits attached to the complaint and/or this declaration were received, created, or otherwise generated at or near the dates reflected on such documents. Such exhibits also are true and correct copies of the corresponding documents in the Special Servicer's business records that are in the custody and control of the Special Servicer.

4. Plaintiff commenced this action seeking, inter alia, foreclosure of its mortgage, in the original principal amount of $14,200,000.00, secured by, inter alia, real property located at 442 West 36th Street, New York, New York 10018, improved by the Hudson River Hotel, a 15-story, 56-room, limited-service lodging facility (the "Hotel"), and more particularly described in Exhibit 1 annexed hereto (the "Property").

5. I reviewed the allegations in the complaint (see ECF No. 1) in connection with making this declaration, and, I verify that the facts in the complaint are true and correct. I submit this declaration in support of its application for, inter alia, the appointment of a receiver,

#125868777_v5 527548.00038

brought on by emergency application, because, inter alia, Borrowers have ceased Hotel operations at the Property, refused to grant Plaintiff access to the Property and, based on an exterior inspection of the Property on June 30, 2021, seemingly abandoned the Property.

A. **The Loan Documents**

6. Pursuant to that certain Loan Agreement dated as of September 3, 2019 (the "Loan Agreement") executed by and between Borrowers and Ladder Capital Finance LLC ("Original Lender"), Plaintiff's predecessor-in-interest, Original Lender made a loan to Borrowers in the original principal amount of $14,200,000.00 (the "Loan").  Compl. ¶ 13.  A true and correct copy of the Loan Agreement as amended is annexed hereto as Exhibit 2.

7. To evidence its indebtedness under the Loan Agreement, on or about September 3, 2019, Borrowers executed and delivered to Original Lender that certain Consolidated, Amended and Restated Promissory Note in the original principal amount of $14,200,000.00 (the "Note"). Id. ¶ 14.  A true and correct copy of the Note is annexed hereto as Exhibit 3.

8. To secure payment of the Note, on or about September 3, 2019, Borrowers executed, acknowledged and delivered to Original Lender, that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of September 3, 2019, and in the original principal amount of $14,200,000.00 (the "Mortgage"). Id. ¶ 15.  On September 6, 2019, Original Lender duly recorded the Mortgage against the Property in the Office of City Register of the City of New York (the "City Register's Office") as City Register File Number ("CRFN") 2019000286575 and duly paid the mortgage recording taxes. Id. ¶ 16.  A true and correct copy of the Mortgage is annexed hereto as Exhibit 4.

9. As additional collateral security for the payment of the Loan, Borrowers executed, acknowledged, and delivered to Original Lender an Assignment of Leases and Rents dated as of September 3, 2019 (the "ALR") pursuant to which Borrower, inter alia, granted to Original Lender a security interest in all Leases and Rents (as defined in the Loan Agreement) generated by the Property. Id. ¶ 18. On September 6, 2019, Original Lender duly recorded the ALR against t in City Register's Office as CRFN 2019000286576. Id. A true and correct copy of the ALR is annexed hereto as Exhibit 5.

10. In order to induce Original Lender to give the Loan and to further secure its repayment, Defendants Ae Sook Choi and Jin Sup An (collectively, "Guarantors") executed a Limited Recourse Guaranty of Recourse Obligations dated September 3, 2019 (the "Guaranty"), wherein and whereby Guarantors irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined in the Guaranty) of Borrowers (The Loan Agreement, the Note, the Mortgage, all UCC-1s, the Guaranty, and all related loan documents shall be referred to collectively herein as the "Loan Documents").[1] Id. ¶ 23. A true and correct copy of the Guaranty is annexed hereto as Exhibit 6.

11. By virtue of, inter alia, a series of allonges to the Note, assignments of the Mortgage, and assignments of the ALR, Plaintiff acquired all of right, title and interest in and to the Note, the Mortgage, the ALR and all related loan documents (collectively, the "Loan Documents"). Id. ¶¶ 22-35. Accordingly, Plaintiff is the current owner and holder of the Loan and the Loan Documents. Id. ¶ 36. True and correct copies of the aforementioned assignment documents are annexed hereto as Exhibit 7 through Exhibit 10 and incorporated fully herein by reference.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed in the Loan Documents.

#125868777_v5 527548.00038

**B.     Relevant Loan Document Provisions Regarding
        Receiversip and Borrowers' Rent Turnover Obligation**

12. Section 1.2 of the Mortgage provides for Borrowers' absolute assignment of the Rents, and evidences Borrowers' grant of a license to Borrowers to collect the Rents (among other amounts), and Borrowers' obligation to hold in trust sufficient Rents and other amounts to pay sums due under the Loan Documents:

> Section 1.2   Assignment of Rents. Borrower does hereby absolutely and unconditionally assign to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of Section 7.1(h) of this Mortgage, Lender grants to Borrower a revocable license to (i) collect, receive, use and enjoy the Rents. Borrower shall hold the Rents, or any portion thereof sufficient to discharge all current sums due in respect of operating expenses for the Property and on the Debt, for use in the payment of such sums.

See Ex. 4. The ALR also memorializes Borrowers' absolute assignment of the Leases and Rents to Plaintiff. See Ex. 5 §§ 1.1(a), (b) and 2.1.

13. Section 7.1(g) of the Mortgage provides that, upon the occurrence and during the continuance of any Event of Default, Lender may:

> apply for the appointment of a receiver, trustee, liquidator or conservator of the Property,-which appointment is hereby authorized and consented to by Borrower, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor, or indemnitor with respect to the Loan or any Person liable for the payment of the Debt or any part thereof.

See Ex. 4. Receivership is similarly recognized as among Plaintiff's remedies in the ALR.

> Lender may, at its option, without waiving such Event of Default, without regard to the adequacy of the security for the Obligations, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and

>exclude Borrower and its agents or servants wholly therefrom, and take possession of the property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem roper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and all sums due under all Lease Guaranties . . . .

See Ex. 5 § 3.1.

        14.      Further, Section 7.1(h) of the Mortgage provides, upon the occurrence and during the continuance of any Event of Default, that:

>the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business threat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment and performance of the Obligations in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges,

       insurance and other expenses in connection with the Property, as
       well as just and reasonable compensation for the services of Lender,
       its counsel, agents and employees;

See Ex. 4; see also Ex. 5 § 1.2 ("Upon the occurrence of an Event of Default, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and all sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property.").

**C.**  **The Defaults and Circumstances Warranting the Appointment of a Receiver**

    15. Events of Default have occurred and are continuing under the Loan Documents based on, inter alia: (i) Borrowers' continued failure to remit the Monthly Debt Service Payments on the May 2020 Monthly Payment Date and each Monthly Payment Date occurring monthly thereafter (the "Payment Default"); (ii) Borrowers' representations and warranties in Section 3.1.24 of the Loan Agreement being false or materially misleading as of September 3, 2019, the date they were made, because Borrowers previously incurred the indebtedness subsequently secured by that certain mortgage, dated November 15, 2019 and in the original principal amount of $1,100,000.00, that NewBank recorded against the Property on November 21, 2019 with the City Register's Office as CRFN 2019000381383 (the "Subordinate Mortgage") as an unpermitted debt and encumbrance against the Property (the "Fraud Default"); (iii) Borrowers' breaches of the covenants contained in Sections 4.1.15 of the Loan Agreement and the Property becoming subjected to the Subordinate Mortgage lien (the "Covenant Default"); (iv) Borrowers' failure to maintain insurance as required under Section 5.1.1(a) of the Loan Agreement (the "Insurance Default"); (v) Borrowers' continued failure to provide certain financial items, required to be furnished to Plaintiff pursuant to Section 4.1.7(c)(i) of the Loan Agreement, for thirty (30) days after notice (the "Financial Reporting Default"); (vi) Borrowers' continued failure to uphold

its cash management obligations, as delineated within Article 6 of the Loan Agreement, for thirty (30) days after notice (the "Cash Management Default"); and (vii) Borrowers' cessation of and continuous failure to resume operations at the Property in violation of Section 4.1.19(b)(i) of the Loan Agreement (the "Cessation of Operations Default") (collectively, the "Defaults"). Compl. ¶¶ 37-67.

16. By Notice of Event of Default and Demand for Payment dated July 20, 2020 (the "July 2020 Notice of Default"), Plaintiff, through Special Servicer, notified Borrowers of the Payment Default, revoked Borrowers' license to collect the Rents and profits generated by the Property, and demanded that they comply with their obligations under the Loan Documents. Id. ¶ 39. A true and correct copy of the July 2020 Notice of Default is annexed hereto as Exhibit 11.

17. By letter dated November 13, 2020 (the "Notice of Acceleration"), Plaintiff, through counsel, inter alia, notified Borrowers and Guarantors of their failure to cure the Payment Default and accelerated all sums due and owing under the Loan Documents. Id. ¶ 72. A true and correct copy of the Notice of Acceleration is annexed hereto as Exhibit 12.

18. By Notice of Default and Demand for Financial Information dated June 3, 2021 (the "June 2021 Notice of Default"), the Plaintiff, through counsel, notified Borrowers and Guarantors of, inter alia, the Insurance Default. Id. ¶ 53. A true and correct copy of the June 2021 Notice of Default is annexed hereto as Exhibit 13.

19. Upon information and belief, the Property, the Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrowers' Assets") are the sole assets of Borrowers.

20. Except for certain limited qualifications as set forth in the Loan Documents, Plaintiff's ability to recover the Loan is limited to the Property and the Rents, which serve as Plaintiff's primary source of collateral for the Loan.

21. As of the date hereof, Borrowers have failed to cure the Defaults and to turn over the Rents and profits generated by the Property, despite demand. Borrowers and Guarantors have further failed to uphold its financial reporting obligations under the Loan Documents by, inter alia, committing and failing to cure the Financial Reporting Default. Compl. ¶¶ 55-59. As a result, and as is evident by Borrowers' intentional refusal to allow Plaintiff to inspect the Property (see infra ¶¶ 24-30), Borrowers are concealing the financial status and performance of the Property in direct breach of its contractual obligations under the Loan Agreement, thereby leaving Plaintiff to speculate as to the status of its collateral.

22. Moreover, through obtainment of a recent title search, Plaintiff has learned of Borrower's providing of the Subordinate Mortgage, thereby further exacerbating Plaintiff's concern of its collateral. A true and correct copy of the Subordinate Mortgage is annexed hereto as Exhibit 14 and incorporated herein by reference.

23. Perhaps most concerning, however, is Borrowers' cessation of and continuous failure to resume Hotel operations at the Property. Upon information and belief, Borrower shut down the Hotel in June 2020 in response to the COVID-19 pandemic. Concerned about the status of its collateral, since that time, Plaintiff has made numerous attempts to inspect the Property in accordance with its rights under Section 4.1.15 of the Loan Agreement. As of the date of this declaration, Borrowers have refused to provide Plaintiff with access to the Property.

24. Specifically, Plaintiff coordinated an inspection of the Property with Borrowers for September 28, 2020 at 1:00 PM. Plaintiff arranged for an inspector from Strategic

Asset Services Inspections ("SAS Inspections") to inspect the Property who, upon information and belief, arrived at the Property at 12:50 PM and waited until 1:20 PM but no representative of Borrowers showed, thereby precluding the inspection from going forward on September 28, 2020.

25. Upon information and belief, an inspector from SAS Inspections contacted Borrowers at (212) 620-0938 on June 16, 2021, June 17, 2021 and June 21, 2021 for purposes of scheduling an inspection but never received a return phone call.

26. On June 15, 2021, I contacted Borrower's representative, Marcos Coto-Batres of Borrower's counsel, Morrison & Tenenbaum PLLC, to advise him of Plaintiff's request for access to the Property. Upon receiving no response and as set forth in the accompanying Declaration of Keith M. Brandofino, Esq., ("Brandofino Decl."), Plaintiff, through its counsel, attempted to coordinate Plaintiff's access to the Property through Borrowers' counsel for an inspection on June 30, 2021. See Brandofino Decl. ¶ 5, Ex. B.

27. Notwithstanding, Borrower's ultimately refusal to grant Plaintiff access to the Property, upon information and belief, an agent of Plaintiff visited the Property on June 30, 2021 and found the Property boarded up and in an apparent state of abandonment. True and correct copies of the photographs taken at the Property on June 30, 2021 are collectively annexed hereto as Exhibit 15.

28. As further set forth in the Brandofino Decl., Plaintiff, through counsel, again attempted to coordinate an inspection of the Property with Borrower's counsel in September 2021 but to no avail. See Brandofino Decl. ¶ 6, Ex. C.

29. Despite the fact that the New York hospitality industry has seemingly revived since the onset of the COVID-19 pandemic, photographs taken at the Property on January 13, 2022 indicate that the Hotel still remains closed and at least partially boarded up. True and

correct copies of the photographs taken at the Property on January 13, 2022 are collectively annexed hereto as Exhibit 16.

30. Plaintiff, as an interested and secured party, is threatened with material losses and injuries, including the Borrowers' Assets suffering continuing waste and a dissipation or diminution in value on account of Borrowers' utter abandonment of the Property and continuous refusal to resume Hotel operations thereat, if a receiver is not appointed over Borrowers' Assets and Borrowers remain in control of them.

31. Despite the fact that Property has been seemingly abandoned for over a year, that Borrowers have taken no steps to resume Hotel operations thereat has deprived Plaintiff of the Rents that could be generated by the Property, which Rents serve as a portion of Plaintiff's Loan collateral. Having taken no such steps, Borrowers' maintenance of control of Borrowers' Assets threatens Plaintiff with material losses and injury, including the Borrowers' Assets' sufferance of continuing waste and a dissipation or diminution in value.

32. As a result of the foregoing, Plaintiff respectfully requests the immediate appointment of Janus Hotels & Resorts as receiver of the Property.

FURTHER DECLARANT SAYETH NAUGHT.

Executed on this 25th day of January 2022.

_____
JAVIER CALLEJAS

11

#125868777_v5 527548.00038