UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2019-C17, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2019-C17, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019,<br><br>                                    Plaintiff,<br><br>          v.<br><br>36th STREET PROPERTY INC.; HR 442 CORP.; AE SOOK CHOI; JIN SUP AN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEWBANK; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                                    Defendants. | Civil Action File No.<br>22-cv-00302-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR THE IMMEDIATE APPOINTMENT OF A RECEIVER**

> HOLLAND & KNIGHT LLP
> Keith M. Brandofino, Esq.
> David V. Mignardi, Esq.
> Attorneys for Plaintiff
>   *Wilmington Trust, National Association, As Trustee For The Benefit of the Registered Holders of UBS Commercial Mortgage Trust 2019-C17, Commercial Mortgage Pass-Through Certificates Series 2019-C17, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019*
> 900 Third Avenue, 20th Floor
> New York, New York 10022
> (212) 751-3001

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND.......................................................................................................2

ARGUMENT PLAINTIFF IS ENTITLED TO THE APPOINTMENT OF A RECEIVER .........3

    I.      Borrowers' Assignment of Rents to Plaintiff  and Consent to the Appointment of
a Receiver..................................................................................................................3

    II.     Equitable Considerations Support the Appointment of a Receiver .........................7

CONCLUSION..............................................................................................................................10

527548.000011 24910112.4

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
    839 F.2d 93 (2d Cir. 1988)..................................................................................................5

*Credit Lyonnais v. Getty Square Associates*,
    876 F.Supp. 517 (S.D.N.Y. 1995)......................................................................................3

*Gustavia Home, LLC v. Rutty*,
    720 Fed.Appx. 27 (2d Cir. 2017).........................................................................................9

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,
    866 F. Supp. 2d 247 (S.D.N.Y. 2012)..............................................................................5, 7

**Other Authorities**

Fed. R. Civ. P. 66...............................................................................................................1, 3

ii

## <u>INTRODUCTION</u>

Plaintiff,[1] acting by and through Special Servicer, as special servicer under the PSA, submits this memorandum of law in support of its emergency motion seeking an order appointing Janus Hotel Management Services, LLC ("Janus") as receiver of the Borrower's Assets pursuant to Fed. R. Civ. P. 66, and granting such other and further relief as is just and proper.

By this action, Plaintiff seeks to, <u>inter alia</u>, foreclose the Mortgage securing the Loan in the original principal amount of $14,200,000.00 against, among other collateral, the Borrower's Assets.  Borrower has defaulted under the Mortgage and related Loan Documents by, <u>inter alia</u>, continuously failing to remit all sums payable on the May, 2020 and each payment due monthly thereafter.

Plaintiff now moves for the appointment of a receiver over the Borrower's Assets during the pendency of this action.  This Court should grant Plaintiff's motion for several reasons. First, Borrower transferred equitable title to the Rents to Plaintiff and in the Mortgage agreed that, upon Borrower's default thereunder, Plaintiff is duly entitled to reobtain possession thereof. Therein, Borrower further acknowledged Plaintiff's entitlement to apply for the appointment of a rent receiver without notice and without regard for either the adequacy of the security of the Debt or Borrower's solvency, and expressly and irrevocably consented to such appointment.  Further, although Plaintiff has revoked Borrower's license to collect and has demanded remittance of the Rents, Borrower continues to ignore its Cash Management Obligations as well as its rent turnover obligation.

---

[1] Capitalized terms not defined herein shall have the same meanings as ascribed in the accompanying Declaration of Keith M. Brandofino, Esq., dated February 1, 2022 ("Brandofino Decl.") and Declaration of Javier Callejas, sworn to on January 25, 2022 ("Callejas Decl.").

In addition, due to Borrower's continuous failure to uphold its contractual reporting obligations under the Loan Documents, Plaintiff has little information on the current status of the tenancies at the Property, the performance of the Hotel itself and overall financial health of Borrower.  Furthermore, Borrower represented and warranted that Borrower had not incurred any indebtedness other than the Loan at the time of the Loan's origination and covenanted not to incur any indebtedness other than the Loan in the future.  However, Plaintiff recently discovered the existence of the Subordinate Mortgage and its encumbrance against the Property, which Borrower gave shortly after origination of the Loan.  Most alarming and most supportive of Plaintiff's application is the fact that Borrowers have ceased Hotel operations at the Property, repeatedly refused to grant Plaintiff access to the Property and, based on exterior inspections of the Property on June 30, 2021 and January 13, 2022, have seemingly abandoned the Property.

Accordingly, and as the Loan is generally non-recourse, Borrower has little incentive to cure the existing Events of Default and is seemingly content with circumstances remaining status quo.  With Borrower's Assets serving as Plaintiff's primary, if not sole, source of recovery for the Loan, any significant diminution in value thereof would yield irreparable harm to Plaintiff.  As Plaintiff possesses no other adequate remedy at law, this Court should grant Plaintiff's request for the appointment of a receiver over Borrower's Assets.

For the reasons more fully set forth below, Plaintiff respectfully requests that the Court grant this motion and appoint Janus as receiver of the Borrower's Assets.

## **FACTUAL BACKGROUND**

The factual background relevant to the instant motion is fully set forth in the Brandofino Decl. as well as the Callejas Decl. that are submitted herewith, and the documents respectively annexed thereto and, therefore, will not be repeated herein.

2

<u>ARGUMENT</u>
<u>PLAINTIFF IS ENTITLED TO THE APPOINTMENT OF A RECEIVER</u>

The Federal Rules of Civil Procedure "govern an action in which the appointment of a receiver is sought . . . [b]ut the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66.

As more fully set forth below, not only do the express terms of the Loan Documents support the appointment of a receiver, but various other, equitable factors warrant such relief.

**I.    Borrowers' Assignment of Rents to Plaintiff**
**    <u>and Consent to the Appointment of a Receiver</u>**

First, various provisions in the Loan Documents weigh in favor of the appointment of a receiver.  Pursuant to Section 1.2 of the Mortgage, Borrower absolutely assigned the Rents to Plaintiff, as fully set forth below:

> Borrower does hereby absolutely and unconditionally assign to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of Section 7.1(h) of this Mortgage, Lender grants to Borrower a revocable license to (i) collect, receive, use and enjoy the Rents. Borrower shall hold the Rents, or any portion thereof sufficient to discharge all current sums due in respect of operating expenses for the Property and on the Debt, for use in the payment of such sums.

<u>See</u> Callejas Decl., Ex. 4. The ALR similarly memorializes Borrowers' absolute assignment of the Leases and Rents to Plaintiff. <u>See</u> Ex. 5 §§ 1.1(a), (b) and 2.1.

Based on this Mortgage provision and the ALR, Plaintiff possesses (has possessed since Borrower's commission of the Defaults) equitable title to the Rents generated by the Property, for which Plaintiff seeks the appointment of a receiver. <u>See</u> <u>Credit Lyonnais v. Getty Square Associates</u>, 876 F.Supp. 517, 521 (S.D.N.Y. 1995) ("The law is clear that where an assignment of rents is a present tense assignment of all rents to be held in trust for the benefit of

3

the mortgage lender, the mortgage lender is entitled to all rents paid to the mortgagor from the date

of the mortgagor's default.") (citations omitted).  Indeed, Section 1.2 of the Mortgage makes clear

that, with respect to the Rents, Borrower possesses nothing more than a license to collect them, a

license which Plaintiff has now revoked. See Callejas Decl. ¶¶ 12, 16, Ex. 4, 11.

Further, and as memorialized in Section 7.1(h) of the Mortgage, Borrower and

Original Lender agreed to this very same arrangement, in that, upon the occurrence of an Event of

Default:

> the license granted to Borrower under Section 1.2 hereof shall
> automatically be revoked and Lender may enter into or upon the
> Property, either personally or by its agents, nominees or attorneys
> and dispossess Borrower and its agents and servants therefrom,
> without liability for trespass, damages or otherwise and exclude
> Borrower and its agents or servants wholly therefrom, and take
> possession of all books, records and accounts relating thereto and
> Borrower agrees to surrender possession of the Property and of such
> books, records and accounts to Lender upon demand, and thereupon
> Lender may (i) use, operate, manage, control, insure, maintain,
> repair, restore and otherwise deal with all and every part of the
> Property and conduct the business thereat; (ii) complete any
> construction on the Property in such manner and form as Lender
> deems advisable; (iii) make alterations, additions, renewals,
> replacements and improvements to or on the Property; (iv) exercise
> all rights and powers of Borrower with respect to the Property,
> whether in the name of Borrower or otherwise, including, without
> limitation, the right to make, cancel, enforce or modify Leases,
> obtain and evict tenants, and demand, sue for, collect and receive all
> Rents of the Property and every part thereof; (v) require Borrower
> to pay monthly in advance to Lender, or any receiver appointed to
> collect the Rents, the fair and reasonable rental value for the use and
> occupation of such part of the Property as may be occupied by
> Borrower; (vi) require Borrower to vacate and surrender possession
> of the Property to Lender or to such receiver and, in default thereof,
> Borrower may be evicted by summary proceedings or otherwise;
> and (vii) apply the receipts from the Property to the payment and
> performance of the Obligations in such order, priority and
> proportions as Lender shall deem appropriate in its sole discretion
> after deducting therefrom all expenses (including reasonable
> attorneys' fees) incurred in connection with the aforesaid operations
> and all amounts necessary to pay the Taxes, Other Charges,

4

> insurance and other expenses in connection with the Property, as
> well as just and reasonable compensation for the services of Lender,
> its counsel, agents and employees;

See Callejas Decl., Ex. 4; id.; Ex. 5 § 1.2 ("Upon the occurrence of an Event of Default, the license

granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender

shall immediately be entitled to possession of all Rents and all sums due under any Lease

Guaranties, whether or not Lender enters upon or takes control of the Property.").

      Not only does the Mortgage contain a present tense, absolute assignment of rents

clause, it further memorializes Borrower's agreement to receivership upon the occurrence of an

Event of Default.  In New York, "[i]t is entirely appropriate for a mortgage holder to seek the

appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee

has repeatedly defaulted on conditions of the mortgage which constitute one or more events of

default." Citibank, N.A. v. Nyland (CF8) Ltd., 839 F.2d 93, 97-98 (2d Cir. 1988) (citing Mancuso

v. Kambourelis, 72 A.D.2d 636, 637, 421 N.Y.S.2d 130, 131 (3d Dep't 1979)).  Indeed, "the

existence of a provision authorizing the application for a receiver in the event of a default, 'strongly

supports the appointment of a receiver' when there is a default." U.S. Bank Nat'l Ass'n v. Nesbitt

Bellevue Prop. LLC, 866 F. Supp. 2d 247, 250 (S.D.N.Y. 2012) (citing Citibank, N.A., 839 F.2d

at 97).  Here, Section 7.1(g) of the Mortgage contains the following broad, unambiguous covenant:

> Upon the occurrence and during the continuance of any Event of
> Default, Borrower agrees that Lender may take such action, without
> notice or demand, as it deems advisable to protect and enforce its
> rights against Borrower and in and to the Property, including, but
> not limited to, the following actions, each of which may be pursued
> concurrently or otherwise, at such time and in such order as Lender
> may determine, in its sole discretion, without impairing or otherwise
> affecting the other rights and remedies of Lender:

****

5

(g) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, which appointment is hereby authorized and consented to by Borrower, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor, or indemnitor with respect to the Loan or any Person liable for the payment of the Debt or any part thereof;

See Callejas Decl., Ex. 4.  Receivership is similarly recognized among Plaintiff's remedies in the

ALR:

Lender may, at its option, without waiving such Event of Default, without regard to the adequacy of the security for the Obligations, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of the property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem roper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and all sums due under all Lease Guaranties . . . .

Id., Ex. 5 § 3.1.

It is indisputable that Borrower agreed in the foregoing provisions of the Mortgage and ALR that, upon an Event of Default, Plaintiff would be entitled to apply for the appointment of a rent receiver – a remedy to which Borrower expressly and irrevocably consented - and to collect all Rents.  Here, there is no question that Events of Default have occurred entitling Plaintiff to the appointment of a receiver, to wit: the Payment Default, the Fraud Default, the Covenant Default, the Insurance Default, the Financial Reporting Default, the Cash Management Default and the Cessation of Operations Default. Id. ¶ 15; see also Brandofino Decl., Ex. A ¶¶ 37-67.

Based on the foregoing contractual provisions in the Loan Documents, and because Events of Default have indisputably occurred, Plaintiff respectfully submits that it is entitled to

6

take control of the Property and the Rents through the appointment of a receiver.  These facts weigh heavily in favor of appointing a rent receiver.

## II.    Equitable Considerations Support the Appointment of a Receiver

In addition to Borrower's absolute assignment of the Rents to Plaintiff and consent to the appointment of a receiver in the Loan Documents, various other, equitable factors weight in support of the appointment of a receiver.  In determining whether the appointment of a receiver is warranted, federal courts will also consider, inter alia, the following factors:

> Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

U.S. Bank Nat'l Ass'n, 866 F.Supp.2d at 249-50 (granting motion to appoint receiver and citing factors) (quoting Varsames v. Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (1999)) (internal alterations omitted).)  Many of the foregoing factors also weigh in favor of the appointment of a receiver of the Property.

First, it is noteworthy that the Loan is tainted with fraud and defaults have occurred since the date of origination.  Through a recent title search, Plaintiff discovered the encumbrance of the Property by the Subordinate Mortgage, purporting to be for a loan made before origination of the Loan. Id. ¶ 22, Ex. 14.  As a result, Borrower has been in default on its Loan obligations by virtue of its commission of the Fraud Default and the Covenant Default on September 3, 2019 and November 15, 2019, respectively. Id. Given that Borrower has made misrepresentations as to its other indebtedness and has apparently needed additional financing even before origination of the Loan, Plaintiff is concerned that project funds are being misused and, consequently, that the Rents

7

have been, are being or may be misapplied through payment of these purported other debts. Accordingly, Borrower's continued possession of the Borrower's Assets is clear indicia that Borrower is either misappropriating the Rents or mismanaging the Property–either scenario warrants the appointment of a receiver to ensure adequate protection of Plaintiff's mortgage security interest.

Second, there is imminent danger that the Property will suffer waste and diminish in value in the absence of an appointed receiver.  Although Borrower's license to collect the Rents (as defined in the Mortgage, defined below) has been revoked and Plaintiff has demanded remittance of same, Borrower has neither remitted any of the Rents collected nor complied with its contractual Cash Management Obligations. Id. ¶ 16, Ex. 11.  And, with Borrower intentionally concealing the true financial status and performance of the Property by failing deliver complete financial information, in direct contravention of its obligations under the Loan Agreement (id. ¶ 21), Plaintiff is left to speculate as to the condition of the Property, which acts as its primary source of collateral for repayment of the Loan.  Most alarming, however, is the fact that Borrowers ceased Hotel operations at the Property, refused to grant Plaintiff access to the Property and, based on exterior inspections of the Property on June 30, 2021 and January 13, 2022, it appears that the Property is in a statement of abandonment. Id. ¶¶ 23-29, Ex. 15-16; see also Brandofino Decl. ¶¶ 5-6, Ex. B, C.  In order to preserve the value of Borrower's Assets, a receiver is clearly needed to take immediate control of them and operate the Property as an ongoing concern.

Third, Plaintiff's legal remedies would be inadequate in the absence of an appointed receiver.  Indeed, the Loan is generally non-recourse such that, except under limited circumstances as set forth in the Loan Documents, neither Borrower nor Guarantor have personal liability for its repayment. See Callejas Decl., Ex. 1 at § 11.22; Ex. 6 at § 1.2.  Thus, Plaintiff's primary, if not,

sole source of recovery on the Loan is the Borrower's Assets.  With the status of the Property unknown to Plaintiff and seemingly slipping into a state of abandonment, risk of waste and dissipation or diminution in the value of Plaintiff's collateral seems likely, if not, certain.  A receiver is needed to immediately take possession of and preserve the Property until this action is resolved or until Plaintiff coordinates liquidation of the Property.  In turn and without an apparent avenue to recourse liability under the Loan Documents, the harm that Plaintiff would suffer, in the absence of an appointed receiver, far outweighs the harm that Borrower would suffer, should a receiver be appointed, especially in light of Borrower's prior consent to an appointed receiver in precisely this instance.

Fourth, and by virtue of Borrower's execution of the Loan Documents and subsequent default on the Loan, Plaintiff has shown its likelihood of success on the merits of its mortgage foreclosure claim under New York law. See Gustavia Home, LLC v. Rutty, 720 Fed.Appx. 27, 28 (2d Cir. 2017) ("In a foreclosure action under New York law, a plaintiff establishes its prima facie entitlement to summary judgment by producing evidence of the mortgage, the unpaid note, and the defendant's default.") (citations omitted).

Finally, appointment of Janus as receiver for the Borrower's Assets would aid in the protection of the Property and preservation of its value. Janus provides hotel and resort management services for properties throughout the country with tremendous experience managing and acting as court-appointed receiver for properties such as the Property at issue here. See Brandofino Decl., Ex. D.  With such experience and a national presence, Janus is uniquely suited to take possession of the Property, preserve its value and potentially avoid irreparable harm to Plaintiff's collateral.

9

Based on the foregoing, it is clear that many of the relevant factors for this Court's consideration support the appointment of a receiver herein.  Further, and in light of Janus' experience, Plaintiff asks that the Court waive the bond requirement for the appointed receiver or, in the alternative, require that a minimal bond in an amount of no more than $7,500 be posted.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion in its entirety.

Dated: New York, New York
      February 1, 2022

**HOLLAND & KNIGHT LLP**

By: _/s/ Keith M. Brandofino_
    Keith M. Brandofino, Esq.
    David V. Mignardi, Esq.
    Attorneys for Plaintiff
        *Wilmington Trust, National Association,*
        *As Trustee For The Benefit of the Registered*
        *Holders of UBS Commercial Mortgage Trust*
        *2019-C17, Commercial Mortgage Pass-*
        *Through Certificates Series 2019-C17, acting by*
        *and through its special servicer, Rialto Capital*
        *Advisors, LLC, as Special Servicer under the*
        *Pooling and Servicing Agreement dated as of*
        *October 1, 2019*
    900 Third Avenue, 20th Floor
    New York, New York 10022
    (212) 751-3001
    keith.brandofino@hklaw.com
    david.mignardi@hklaw.com

10