UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2019-C17, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2019-C17, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019, <br><br> Plaintiff, <br><br> v. <br><br> 36th STREET PROPERTY INC.; HR 442 CORP.; AE SOOK CHOI; JIN SUP AN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEWBANK; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, <br><br> Defendants. | Case No.: 1:22-cv-00302-LGS |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
ORDER TO SHOW CAUSE FOR THE APPOINTMENT OF PLAINTIFF'S RECEIVER**

KISHNER MILLER HIMES P.C.
40 Fulton Street, 12th Floor
New York, New York 10038
Telephone: (212) 585-3425
*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………..…..ii

PRELIMINARY STATEMENT ….....………………………………………….………1

STATEMENT OF FACTS……………………………….. ………………...……….6

ARGUMENT……………………………………………………………………...6

I.  LEGAL STANDARD FOR THE APPOINTMENT OF A RECEIVER…………………6

II.  THE ALLEGED DEFAULTS AND CIRCUMSTANCES UPON WHICH PLAINTIFF
RELIES FOR THE APPOINTMENT OF A RECEIVER ARE INACCURATE AND
MISREPRESENT DEFENDANTS' GOOD FAITH CONDUCT …..………………..7

      A.  ALLEGED DEFAULTS ARISING OUT OF DEFENDANTS'
DELINQUENT PAYMENTS DURING A GLOBAL PANDEMIC AND
PLAINTIFF'S MISTAKEN AND UNSUBSTANTIATED BELIEF THAT
THE HOTEL CEASED OPERATIONS……………………………………..10

      B.  ALLEGED DEFAULTS ARISING OUT OF FIRST-IN-TIME NEWBANK
MORTGAGE.…………………………………………………………..13

      C.  ALLEGED DEFAULTS ARISING OUT OF PLAINTIFF'S MISTAKEN
AND UNFOUNDED BELIEF THAT HOTEL FAILED TO MAINTAIN
INSURANCE…………………………………………………………..14

   III.  PLAINTIFF'S ORDER TO SHOW CAUSE SHOULD BE DENIED BECAUSE
PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN OF MAKING A
CLEAR EVIDENTIARY SHOWING THAT THE APPOINTMENT OF A
RECEIVER IS NECESSARY…………………………………………………...14

      A.  THE APPOINTMENT OF A RECEIVER IS NOT
AUTOMATIC…………………………………………………………14

      B.  THIS COURT SHOULD DECLINE TO APPOINT A RECEIVER
BECAUSE IT WILL SERVE NO USEFUL PURPOSE AND WILL
INCUR UNNECESSARY COST……………………………………..15

CONCLUSION…………………………………………………………………..18

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Bristol Oaks, L.P. v. Werczberger*,
  No. 95 CV 3973 (FB),
  1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996)…………………………………6, 15

*Citibank, N.A. v. Nyland Ltd.*,
  839 F.2d 93, 97 (2d Cir. 1988)………………………………………………………14, 15

*Clinton Capital Corp. v. One Tiffany Place Developers, Inc.*,
  492 N.Y.S.2d 427, 428 (2d Dep't 1985)…………………………………………14

*Commodity Futures Trading Com. v. Comvest Trading Corp.*,
  481 F. Supp. 438 (D. Mass. 1979)………………………………………………16

*F.D.I.C. v. Vernon Real Est. Invs., Ltd.*,
  798 F. Supp. 1009, 1012 (S.D.N.Y. 1992)………………………………………...14

*Fed. Home Loan Mortgage Corp. v. Jerwin Realty Assocs.*,
  No. CV–92–4626 (CPJ),
  1992 WL 390264, *2 (E.D.N.Y. Dec.14, 1992)……………………………..15, 16, 18

*Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*,
  813 F. Supp. 234, 235 (S.D.N.Y. 1993)………………………………………...14

*Ferguson v. Tabah*,
  288 F.2d 665, 674 (2d Cir. 1961)………………………………………………6, 16

*Fortress Credit Corp. v. Alarm One, Inc.*,
  511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007)………………………………………8

*Foxfire Enterprises, Inc. v. Enterprise Holding Corp.*,
  837 F.2d 597, 598 (2d Cir. 1988)……………………………………………14

*In re V. Savino Oil & Heating Co., Inc.*,
  99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989)………………………………………..16

*Gordon v. Washington*,
  295 U.S. 30, 39, 79 L. Ed. 1282, 55 S. Ct. 584 (1935)………………………………7

*Groh v. Halloran*,
  86 A.D.2d 30, 33, 448 N.Y.S.2d 680, 682 (1st Dept. 1982)…………………………..7

*Hollywood Healthcare Corp. v. Deltec, Inc.*,
    No. CIV.04-1713(RHK/AJB),
    2004 WL 1118610, at *10 (D. Minn. May 17, 2004)…………………………………7

*Home Title Ins. Co. v. Isaac Sherman Holding Corp.,*
    267 N.Y.S. 84, 85 (2d Dep't 1933)……………………………………………………16

*Lipsius v. Lithographers' Finishing Co.,*
    78 Civ. 3627 (CSH),
    1978 U.S. Dist. LEXIS 15800 (S.D.N.Y August 30, 1978)………………………....13

*Rosen v. Siegel*,
    106 F.3d 28, 34 (2d Cir. 1997)………………………………………………….6

*Varsames v. Palazzolo,*
    96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)……………………………………………..7


*Wells Fargo Bank, N.A. v. Tri-5 Realty Mgmt., Inc.*,
    No. 09-CV-847, 2009 WL 2392034, at *1 (N.D.N.Y. Aug. 3, 2009)………………..14

*United States v. Falls Ct. Properties Co.,*
    No. 08-CV-1197 NPMDEP, 2009 WL 1924771, at *4 (N.D.N.Y. July 1, 2009)…….16

Defendants 36th Street Property, Inc., HR 442 Corp., Ae Sook Choi, and Jin Sup An, (collectively, the "Defendants"), respectfully submit this memorandum of law in support of Defendants' opposition ("Opposition") to Plaintiff's motion for an order to show cause seeking the immediate appointment of a receiver ("Motion").

## PRELIMINARY STATEMENT

This dispute[1] arises out of Plaintiff's mistaken and wholly unsubstantiated belief that Defendants' Hotel and Premises were abandoned in violation of its duties and responsibilities under the Mortgage and Loan which was assigned to the Plaintiff via recorded Assignment of Mortgage on March 2, 2020, *i.e.*, at the commencement of the Pandemic. Plaintiff makes unsupported factual statements by way of the submission of the nonparty affidavit of Javier Callejas (herein, the "Callejas Affidavit"), the Asset Manager of Plaintiff's Special Servicer that was recently retained by the Plaintiff, *i.e.*, Rialto Capital Services, LLC ("Rialto"). However, Callejas has no knowledge of the actual facts that transpired between the parties. Callejas was not involved in the negotiations between the parties, nor was he the recipient of the abundant number of communications that were exchanged between the parties. In fact, the Callejas Affidavit does not submit any of the communications that occurred between the parties subsequent to the Pandemic. Needless to say, Defendants have remedied this deficiency by the submission of its own Affidavit of Defendant Ae Sook Choi, the President of both Defendant 36th Street Property, Inc. and HR 442 Corp. Despite Plaintiff's statements claiming otherwise, the Hotel is fully operational, having resumed operations on December 18, 2021, far in advance of Plaintiff's dubious application to this Court for the appointment

---

[1] Defendants do not concede that this Court has subject-matter jurisdiction over Defendants and this claim. For the sole and limited purpose of opposing Plaintiff's Motion, Defendants will assume that federal law applies.

of Plaintiff's Chosen Receiver. Disturbingly, Plaintiff acts as if there has been no communication between the parties throughout the Pandemic, which is false and immediately controverted by the numerous communications between the parties that have been submitted through the Affidavit of Defendant Choi. Plaintiff comes before this Court not only unfamiliar with the facts, but without a scintilla of supporting evidence to buttress its claim that there has been fraud, waste and/or any other dissipation of assets. Quite to the contrary, Defendants have successfully operated the Hotel without incident since first acquiring same in 2016. It was only due to the onset of the Pandemic that the Hotel, like many others entities in the hospitality industry, needed to temporarily close.

An overarching principle of federal receivership law is that the appointment of a receiver is an "extraordinary remedy that should be employed cautiously, and granted only when necessary to protect plaintiffs' interests in the property." Contrary to Plaintiff's assertion that the Mortgage and Loan entitle it to the appointment of a receiver upon Defendants' alleged default, this remedy is not absolute, and a party moving for the appointment of a receiver must show the need for such a drastic remedy *even if* such a provision exists in the governing documents. Plaintiff unequivocally failed to demonstrate the need to employ this extraordinary remedy, and, as such, the Court should summarily deny Plaintiff's application.

Defendants have undertaken extensive efforts to negotiate in good faith with Plaintiff to find a resolution to the issues. Defendants retained a professional Consultant to negotiate with Plaintiff. The attempts by the professional Consultant to reach out to Plaintiff were met with continual delays by Plaintiff, as Plaintiff was not certain who had the authority to negotiate a resolution. As noted, Plaintiff purchased the Mortgage and Loan via recorded

assignment on March 2, 2020, simultaneously with the commencement of the Pandemic. Although unknown to the Defendants at the time, it appears that the recent acquisition of the Mortgage and Loan by Plaintiff explains Plaintiff's confusion and delay in trying to negotiate with Defendants, as Plaintiff simultaneously with the acquisition of Defendants' Mortgage and Loan also acquired, through the entry into a certain Underwriting Agreement, "hundreds upon hundreds" of other loans that assumedly were similarly impacted in some manner by the Pandemic. Therefore, Plaintiff is attempting to do whatever it may to make up for its bad investment and to try to accelerate Defendants' Loan and Mortgage, thereby trying to accrue damages to a higher interest rate and other unnecessary fees and costs that all may have been avoided had Plaintiff entered into good faith negotiations with Defendants to bring about a resolution.

A clear demonstration of Plaintiff's bad faith in negotiating is found directly within this pending Action. This Hon. Court instructed the parties to have a productive dialogue to try to resolve the issues among them. Plaintiff has wholly refused to enter into any negotiations with Defendants, claiming that the history of negotiations did not support continuing them. However, it is clear through the papers submitted by Plaintiff that Plaintiff does not know the full history of the good faith offers continuously made by Defendants subsequent to the Pandemic.

Plaintiff wants this Court to ignore Defendants' successful ongoing operation of the Hotel, the impact that the Pandemic had on the Hotel, and Defendants' good faith efforts to negotiate a restructuring of the Loan. Rather, Plaintiff would have this Court somehow believe the self-serving, unsupported, and factually inaccurate allegations of wrongdoing by Defendants. Plaintiff fails to present documentary evidence of wrongdoing and submits the

3

affidavit of the nonparty who lacks knowledge of the underlying facts and circumstances.

In contrast, Defendants have demonstrated through documentary evidence and affidavits with parties with knowledge that Defendants have acted with good faith throughout the relationship with Plaintiff.

As a demonstration of Defendants' goodwill, Defendants' conduct during the unprecedented global COVID-19 Pandemic demonstrates Defendants' unwavering commitment to maintaining the long-term health and viability of the Hotel and the Property. Immediately following the onset of the Pandemic, Defendants attempted to negotiate in good faith with Plaintiff, through its various representatives, a Loan restructuring or some type of payment relief, given the restrictions and mandates in place making Defendants' business impossible. The present condition of the Premises and Defendants' continuous attempts to fulfill its obligations under the Mortgage and Loan in good faith speak to the impropriety of appointing a receiver in this matter. Defendants managed to keep the hotel business – *i.e.*, Plaintiff's security interest in the Loan – afloat and reopened as the Pandemic began to subside. This, sadly, cannot be said for many hotels (and other businesses) in New York City, and speaks to Defendants' effective management of the property.

The Court, in determining whether appointment of a receiver is necessary, considers the following factors: 1) fraudulent conduct on the part of defendant; 2) the imminent danger of property being lost, concealed, injured, diminished in value, or squandered; 3) the inadequacy of the available legal remedies; 4) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and 5) plaintiff's probable success in the action and the possibility of irreparable injury to its interests in the property.

_Fraud_: Fraud needs to be pled with particularity. Herein, fraud is not specified in any type of detail that would support a fraud action, as, fraud, does not exist with the facts at hand. Plaintiff's allegations at most would be considered speculation, although in reality, are false. For instance, Plaintiff makes the claim that Defendants have refused to resume operations of the Hotel. Same is false. Plaintiff further claims that Defendants do not have insurance. Same is also false. Plaintiff claims that Defendants took out a loan unbeknownst to Plaintiff against the Loan Documents. This statement, by definition, is false, as Plaintiff was assigned the Mortgage and Loan on March 2, 2020, and the loan of which they complain was recorded in 2019, thereby proving the inherent falsity of Plaintiff's self-serving allegations.

Plaintiff's other made-up claims deal with allegations of Defendants' financial condition, which, admittedly, during the Pandemic was not what it was prior thereto. Plaintiff summarily concludes and states that, despite the impact of the Pandemic, Defendants are committing fraud, waste, etc. by: misapplying rents, mismanaging the Property, not honoring certain cash management obligations, failing to turn over rents, and not honoring reporting requirements. Plaintiff pretends that there was no Pandemic and that the Pandemic had no impact on the Property. Defendants have utilized rents to maintain the Property's value and keep the Property operational. It is respectfully submitted, that Plaintiff's factual showing does not demonstrate that Plaintiff's interest in the Property is in imminent danger of irreparable loss or waste that would necessitate appointing a receiver.

Most importantly, Plaintiff has not presented clear evidence that the Property is in imminent danger of being lost, concealed, injured, diminished in value or squandered which would necessitate appointment of a receiver. The Property remains fully functioning and operational. Plaintiff's allegations that Defendants have refused them access to the Property

for inspections is preposterous as the Hotel is open and anyone may readily visit. At most, it was a miscommunication relating to an inspection although none of these warrants nor meets the high burden of imminent danger as contemplated by the Court. The only evidence submitted by Plaintiff are photos of the Property boarded up. Defendants took prudent safety measures to protect the integrity of the Hotel by boarding up glass windows and doors to protect the Property, staff, and guests of the Hotel during a time of rising crime and homelessness in New York City. To claim anything else does not comport with the actual facts.

## STATEMENT OF FACTS

For the sake of brevity, the underlying factual background relevant to the instant Opposition to Plaintiff's Motion is fully set forth in the Affirmation of Bryan W. Kishner ("Kishner Aff."), the Affidavit of Defendant Ae Sook Choi ("Choi Aff."), and the Affidavit of Defendant Jin Sup An ("An Aff.") that are submitted herewith, and the documents annexed thereto, respectively.

## ARGUMENT

### I.    LEGAL STANDARD FOR THE APPOINTMENT OF A RECEIVER

Whether a federal court should appoint a receiver in a diversity action is governed by federal law. *Bristol Oaks, L.P. v. Werczberger*, No. 95 CV 3973 (FB), 1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996). An overarching principle of federal receivership law is that the appointment of a receiver is an "extraordinary remedy that should be employed cautiously, and granted only when necessary to protect plaintiffs' interests in the property." *See Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997); *Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961) (appointment of a receiver is a "drastic remedy" to be imposed "only where no lesser

relief will be effective."); *see also Gordon v. Washington,* 295 U.S. 30, 39, 79 L. Ed. 1282, 55 S. Ct. 584 (1935) (appointment of receiver appropriate only where there is a threatened loss or injury to property which only receivership would avoid).

The following factors are among those considered relevant to establishing the need for a receivership in this Court: 1) fraudulent conduct on the part of the defendant; 2) the imminent danger of property being lost, concealed, injured, diminished in value, or squandered; 3) the inadequacy of the available legal remedies; 4) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, 5) plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property. *See Varsames v. Palazzolo,* 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000); s*ee also Hollywood Healthcare Corp. v. Deltec, Inc.*, No. CIV.04-1713(RHK/AJB), 2004 WL 1118610, at \*10 (D. Minn. May 17, 2004) (court denied appointment of receiver where plaintiff did not show "sufficient probability" that fraudulent conduct had occurred, that its property interests were in imminent danger of being concealed, lost or diminished, and because plaintiff had "available adequate legal remedies - *i.e.*, exercising its rights as a secured party under the Uniform Commercial Code and seeking damages at trial"); *see also Groh v. Halloran*, 86 A.D.2d 30, 33, 448 N.Y.S.2d 680, 682 (1st Dept. 1982) (holding that in the absence of clear proof of the danger of irreparable loss or damage a temporary receiver should not be appointed.)

## II.     THE ALLEGED DEFAULTS AND CIRCUMSTANCES UPON WHICH PLAINTIFF RELIES FOR THE APPOINTMENT OF A RECEIVER ARE INACCURATE AND MISREPRESENT DEFENDANTS' GOOD FAITH CONDUCT

Plaintiff initiated the instant Action on or about January 12, 2022, at which time New York State's COVID-19 Eviction  Moratorium Extension and Tenant Landlord Relief Act (L.

2021, c. 147) (the "Act") was in effect but was inevitably coming to an end shortly thereafter. The Act suspended eviction and foreclosure proceedings to give commercial renters and property owners the opportunity to submit a hardship declaration attesting to any Pandemic-related hardships that may impact the renter or property owner's ability to meet its payment obligations. The Act was signed into law by Governor Kathy Hochul on September 2, 2021, and includes an addition to the previous law that allows the petitioner in an eviction, or foreclosing party in a foreclosure, to make a motion to challenge an adverse party's hardship claim. Where such a challenge is made, the law requires the court to "grant a hearing to determine whether to find the respondent's [or defendant's] hardship claim invalid."

In order to initiate the instant Action, Plaintiff filed the Callejas Affidavit stating the good faith bases to challenge Defendants' declaration of COVID-19 hardship, which Defendants provided to Plaintiff on or about June 7, 2021, as discussed in more detail *infra*. (Choi Aff. ¶64, Exh. 14.) The Act officially expired on January 15, 2022, and, by Administrative Order 35/22 of the Chief Administrative Judge of the Courts, dated January 16, 2022, the litigation and adjudication of foreclosure matters were allowed to resume in the normal course. That Plaintiff instigated this Action in the context of the Act is highly pertinent, as it reveals the motivation behind many of the unsubstantiated allegations regarding Defendants' various alleged defaults, such as Plaintiffs' baseless claim that the Hotel was abandoned.

In order to successfully move for the appointment of a receiver, "[f]irst, the applicant must demonstrate that there has been a default. [. . .] "There must be some proof in the form of an affidavit of a person with knowledge, or a complaint verified by a person with knowledge."" *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y.

2007). Remarkably, Plaintiff does not actually submit an affidavit attesting to the facts that exclusively form the basis of Plaintiff's application, which indicates that Plaintiff is unable to support its unfounded allegations with concrete facts grounded in reality. The entire factual premise of Plaintiff's application for this extraordinary remedy rests solely on the affidavit of an individual who lacks direct knowledge of the Property. Defendants did not interact with Javier Callejas, and Mr. Callejas does not allege that he interacted with Defendants. (Choi Aff. ¶70-71; An Aff. ¶18-19.) Mr. Callejas does not allege that he has entered the Hotel and, further, expressly states in his affidavit that the testimony contained therein is based on his *review of the business records of Plaintiff.* (Callejas Aff. ¶3.) Plaintiff does not provide any reliable evidence to support its claims.

Plaintiff alleges and heavily relies on seven (7) "Events of Default" pursuant to the Loan and the Assignment of the Mortgage and ALR as the foundation for its application for the appointment of a receiver: 1) failure to resume operations of the Hotel in violation of the Loan and Mortgage (the "Alleged Cessation of Operations Default"); 2) failure to submit monthly Loan payments (the "Alleged Payment Default"); 3) failure to provide financial documentation within a specified period of time in response to a Notice of Default (the "Alleged Financial Reporting Default"); 4) failure to honor Cash Management obligations in violation of the Loan and Mortgage (the "Alleged Cash Management Default"); 5) misrepresentation on the Loan Application of a cross-collateralized loan (the "Newbank Loan") that Defendants took out from another lender prior to Plaintiff obtaining the Loan (the "Alleged Fraud Default"); 6) obtaining the Newbank Loan in violation of the Loan and Mortgage (the "Alleged Covenant Default"); and 7) failure to maintain insurance on the Property (the "Alleged Insurance Default") (collectively, the "Alleged Defaults"). (Choi Aff.

¶19; Plaintiff's Memorandum of Law ("P. Memo."), p. 7-10, Callejas Aff. ¶15.)

Plaintiff argues that its application for a receiver – a remedy widely perceived to be drastic in nature – is reasonable based on these seven Alleged Defaults. Plaintiff, through its baseless allegations, attempts to paint Defendants as having committed seven separate wrongs, each warranting the enactment of a process that would deprive Defendants of their Property. However, parsing through Plaintiff's duplicative accusations and culling the particularly fantastical allegations, Plaintiff actually only alleges three "Events of Default" all of which may be readily disproved.

### A. Alleged Defaults Arising Out Of Defendants' Delinquent Payments During a Global Pandemic and Plaintiff's Mistaken and Unsubstantiated Belief That the Hotel Ceased Operations

The Alleged Payment Default, Alleged Cash Management Default, Alleged Financial Reporting Default, and Alleged Cessation of Operations Default arise out of the same nucleus of facts, or the same "event", namely, that the COVID-19 Pandemic forced Defendants to temporarily suspend operations to protect the public and be in compliance with governmental mandates and, as a result, Defendants were unable to make their monthly Loan payments starting in May 2020. (Choi Aff. ¶¶ 29, 33-34, 40, Exh. 3; An Aff. ¶¶7-10.) These Alleged Defaults also fundamentally derive from Plaintiff's mistaken belief that Defendants permanently ceased Hotel operations and abandoned the property in January 2022. As discussed *infra*, although Defendants had to temporarily suspend operations of the Hotel for a portion of 2020 and 2021, the Hotel since reopened and resumed regular operations on December 18, 2021. (Choi Aff. ¶¶ 55, 66; An Aff. ¶¶12-13.) That Plaintiff filed a Motion claiming the Hotel appears to be abandoned – a mistaken belief that could have been dispelled instantly had Plaintiff simply entered the Hotel, which is open to the public – further

underscores the absence of evidence in support of Plaintiff's application.

In March 2020, the COVID-19 Pandemic hit the United States, prompting local state governments to enact emergency legislation mandating the closure of non-essential businesses and limiting the number of individuals who can gather in a given space. Defendants swiftly recognized that the Pandemic and related regulations would negatively impact their source of income and revenue, thus threatening Defendants' ability to make monthly payments on the Loan. (Choi Aff. ¶¶ 33-36, Exh. 3.) In fact, as of March 16, 2020, ninety percent (90%) of the Hotel's reservations for March 2020 and future reservations were cancelled, and the Hotel had not received any new reservations, which Defendants immediately communicated to Plaintiff. (Choi Aff. ¶¶ 36-41, Exh. 3, pp. 2, 13.) Beginning in March 2020, and continuing through September 2020, Defendants proactively and repeatedly reached out to Plaintiff's representatives, the Loan servicers, attempting to negotiate a restructuring of the Loan or otherwise obtain needed relief from making the as-structured monthly payments considering the total, unexpected, and once inconceivable evaporation of the Hotel's revenue source. (Choi Aff. ¶ 36-60, Exhs. 3-10.)

Defendants' early efforts to coordinate with Plaintiff and Plaintiff's representatives, however, were repeatedly thwarted by the bad faith conduct of same. After not receiving a response to their initial Loan payment relief requests for months, Rialto reached out stating, in sum and substance, to even talk to Rialto regarding the Loan, Defendants needed to read and sign a cumbersome letter agreement containing twenty (20) terms to execute (the "Agreement"), as well as a list of ten (10) categories of documents to provide to Rialto prior to the parties discussing the Loan. (Choi Aff. ¶¶49-52, Exh. 5.) Notably, the Agreement expressly provides, "[W]e want to confirm our mutual understanding that all past discussions

and negotiations, as well as all subsequent discussions and negotiations, have been and will be undertaken *with a view toward compromise and settlement*." (emphasis added.) (Choi Aff. ¶52, Exh. 6.)

Defendants signed the Agreement and subsequent thereto and in compliance there with submitted to Rialto a myriad of documents. (Choi Aff. ¶¶ 50-51.) Nevertheless, marking an unexpected departure from what Defendants believed to be joint efforts toward a mutually beneficial Loan restructuring in recognition of the unique economic realities of 2020, Rialto subsequently issued a Notice of Event of Default and Demand for Payment to Defendants, in which it demanded payment of the past-due monthly payments for May 2020 through July 2020. (Choi Aff. ¶53, Exh. 7.)

Defendants communicated to Plaintiff, and Plaintiff was fully aware of, the economic hardships that befell the Hotel as a result of the Pandemic. (Choi Aff. ¶ 36-60, Exhs. 3, 8.) Still, Defendants worked toward developing a plan so that they could continue making payments on the Loan, as their financial situation rapidly devolved by no fault of Defendants. Nonetheless, Plaintiff refused to negotiate in good faith and continued its campaign of making unreasonable demands on Defendants. It bears repeating that Plaintiff had full knowledge of Defendants' financial situation and, moreover, of the fact that the Hotel was temporarily closed and not earning revenue, thus obviating the need for financial reporting and Cash Management, as there was nothing to report or manage. (*Id.*)

Plaintiff disregarded Defendants' good faith efforts to coordinate a practicable compromise. Plaintiff essentially brings this motion, requesting the court to take a drastic action, without having engaged in any good-faith negotiations or shown any interest in amicably and mutually beneficially resolving this dispute (by way of restructuring the Loan

to make it feasible for Defendants, while still making meaningful payments on Plaintiff's Loan). To the contrary, Plaintiff, through Rialto, led Defendants into a false sense of security, believing that they were in the process of working something out with Plaintiff. Not days after Defendants finished compiling and submitting voluminous documentation to Plaintiff, Plaintiff issued a Notice of Default and Demand for Payment. (Choi Aff. ¶ 53, Exh. 7.) This is an example of Plaintiff's aggressive, desperate actions to protect its interest from a nonexistent danger.

**B.  Alleged Defaults Arising Out Of First-In-Time Newbank Mortgage**

The Alleged Fraud Default and Alleged Covenant Default similarly arise out of the same event. Plaintiff alleges that Defendants engaged in fraudulent conduct when they misrepresented and concealed an alleged subordinate mortgage by Newbank on the Property at the time of execution of Plaintiff's mortgage. (*See* Pl. Memo. p. 7-8 (citing Callejas Aff. ¶ 22).) However, a record search reveals that Plaintiff's mortgage was recorded by the Office of the City Register on March 2, 2020. (Kishner Aff. ¶ 20, Exh. A.) The Newbank mortgage was recorded on November 21, 2019. (Kishner Aff. ¶ 19, Exh. A.) Thus, Plaintiffs, by definition, had knowledge of the existence of the recorded Newbank mortgage and may not profess that same was a fraud. The Defendants did not issue conceal your credit anything of public record.

Plaintiff's allegations of fraud are unsubstantiated and do not amount to the type of fraudulent behavior that would warrant the extraordinary remedy of appointing a receiver. It is clear, that Plaintiff seeks a monetary remedy not an equitable one.  *See Lipsius v. Lithographers' Finishing Co.,* 78 Civ. 3627 (CSH), 1978 U.S. Dist. LEXIS 15800 (S.D.N.Y August 30, 1978) (court denied application for appointment of receiver where damages were

compensable by money).

**C. Alleged Defaults Arising Out of Plaintiff's Mistaken and Unfounded Belief That Hotel Failed To Maintain Insurance**

The Alleged Insurance Default is unequivocally refuted by the fact that Defendants have continuously maintained insurance on the Property since taking ownership in October 2016. (Choi Aff. ¶20, Exh. 2; An Aff. ¶14.)

**III. PLAINTIFF'S ORDER TO SHOW CAUSE SHOULD BE DENIED BECAUSE PLAINTIFF HAS FAILED TO SATISFY ITS BURDEN OF MAKING A CLEAR EVIDENTIARY SHOWING THAT THE APPOINTMENT OF A RECEIVER IS NECESSARY**

**A. The Appointment Of A Receiver Is Not Automatic**

Receivership is an "extraordinary" and "drastic" remedy that is by no means "automatic" even when expressly provided for in a mortgage agreement. *Wells Fargo Bank, N.A. v. Tri-5 Realty Mgmt., Inc.*, No. 09-CV-847, 2009 WL 2392034, at *1 (N.D.N.Y. Aug. 3, 2009) (quoting *Citibank, N.A. v. Nyland Ltd.,* 839 F.2d 93, 97 (2d Cir. 1988)); *see also Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.,* 813 F. Supp. 234, 235 (S.D.N.Y. 1993) ("A receivership is a drastic remedy dispossessing former owners of assets, imposing substantial additional costs."). An action to foreclose a mortgage is an action in equity, and, as such, the Court may use its discretion to deny an application for appointment of a receiver even where a provision in the governing mortgage agreement specifically authorizes such an appointment. *See Foxfire Enterprises, Inc. v. Enterprise Holding Corp.,* 837 F.2d 597, 598 (2d Cir. 1988) (citing *Clinton Capital Corp. v. One Tiffany Place Developers, Inc.,* 492 N.Y.S.2d 427, 428 (2d Dep't 1985)); *F.D.I.C. v. Vernon Real Est. Invs., Ltd.*, 798 F. Supp. 1009, 1012 (S.D.N.Y. 1992).

Plaintiff asserts that the appointment of a receiver is required by language in its Mortgage and ALR stating that it is "entitled" to the appointment of a receiver in the event of a default. That assertion is incorrect. As stated by the Second Circuit when faced with a similar provision: "the appointment of a receiver is not automatic under the mortgage agreement… the remedy should be applied cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Citibank, N.A.*, 839 F.2d at 97; *see also Fed. Home Loan Mtg. Corp. v. Jerwin Realty Assocs.,* No. CV-92-4626 (CPS), 1992 WL 390264, at *2 (E.D.N.Y. Dec. 14, 1992) ("the Court has the discretion as a matter of equity to deny appointment of a receiver under appropriate circumstances even though the mortgage provides the mortgagee with a specific right to an appointment."); *Bristol Oaks,* 1996 WL 19207, at *1 ("Under federal law, an application for the appointment of a receiver is insufficient if it relies solely on contractual, regulatory or statutory authority for the appointment, whether made on notice or ex parte.").

Plaintiff has patently failed to show that the appointment of a receiver is necessary for protecting Plaintiff's interest in the Property, and, therefore, the language of its Mortgage or ALR authorizing appointment of a receiver is alone insufficient to support Plaintiff's Motion.

**B. This Court Should Decline To Appoint A Receiver Because It Will Serve No Useful Purpose And Will Incur Unnecessary Costs**

In situations where a receiver will serve no useful purpose, this Court may decline to appoint a receiver. *Jerwin Realty Assocs.,* 1992 WL 390264, *2. Similarly, in recognition of the fact that the purpose of a receiver is to ensure the conservation of the premises for both the owner's and the mortgagee's benefit, appointment of a receiver may be denied where it

would result in the debtor incurring unnecessary expense.[2] *United States v. Falls Ct. Properties Co.*, No. 08-CV-1197 NPMDEP, 2009 WL 1924771, at *4 (N.D.N.Y. July 1, 2009) (citing *Jerwin Realty Assocs.,* 1992 WL 390264, at *2)).

Here, appointing a third-party receiver would serve no useful purpose, as Defendants are actively operating and maintaining the Property, and have been doing so throughout the Pandemic. Defendants are familiar with the Property and the inner workings of the Hotel, such that they are the party best suited to continue to manage and maintain the Property. (Choi Aff. ¶¶9-12, Exh. 1; An Aff. ¶¶5-6.) This is underscored by the fact that Defendants kept the Hotel afloat and operational during a global Pandemic, an outcome many business owners unfortunately do not share. Plaintiff has not shown that the Property, or Plaintiff's interest therein, would be better served by a receiver.  *See Commodity Futures Trading Com. v. Comvest Trading Corp.,* 481 F. Supp. 438 (D. Mass. 1979) (court denied appointment of receiver because it found that a receiver would not materially add to the relief previously granted, and plaintiff failed to present a plan or proposal for the compensation of the receiver); *see also Ferguson,* 288 F.2d at 674 (appointment of a receiver is a "drastic remedy" to be imposed "only where no lesser relief will be effective.").

The current management of the Hotel is presumably more likely to manage the premises efficiently than a third-party who has no prior experience managing the building and its tenants. *Cf. In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 524 (Bankr. E.D.N.Y.

---

[2] Plaintiff further complains that Defendants are not applying the rent income in accordance with the Mortgage and argues that appointment of a receiver would alleviate this problem. The ALR does not defeat this Court's equitable power to deny appointment of a receiver where there is no showing that the alternative security is inadequate. *Jerwin Realty Assocs.*, 1992 WL 390264, at *2–3 (citing *Home Title Ins. Co. v. Isaac Sherman Holding Corp.,* 267 N.Y.S. 84, 85 (2d Dep't 1933)). Plaintiff failed to show how Defendants' continued operation of the Property would negatively affect Plaintiff's security interest. That Defendants were unable to remit rent income payments to Plaintiff was solely because of the Pandemic-caused revenue decrease, and was not the result of Defendants' alleged inability to properly maintain the Property and value of Plaintiff's interest.

1989). As such, hiring a third party receiver who is unfamiliar with the Hotel to manage the Property is a highly unnecessary expense, considering that Defendants are already doing so effectively and pursuant to the relevant Loan Agreement, Mortgage, and ALR. Further, Defendants incurred expenses hiring a Consultant and retaining counsel to assist with the process of negotiating a Loan restructuring or developing an alternative and workable payment plan. (Choi Aff. ¶39.) Defendants, when faced with severe financial hardship brought on by an unprecedented, unpredictable, and unprepared-for global Pandemic, rose to the occasion and made several good faith efforts to pay Plaintiff what it could, while still maintaining the health of Plaintiff's security. (Choi Aff. ¶¶ 36-60, Exhs. 3, 5, 6, 8, 10.) In this case, Defendants are properly maintaining the Property, and, more importantly, have been and are still actively trying to make payments on the Loan. This is further evidenced by the fact that Defendants attempted to contact Rialto and figure out something to keep the security intact as early as March 16, 2020, at the very outset of the Pandemic in New York City. (Choi Aff. ¶36, Exh. 3.)

This is an appropriate case for this Court to exercise its equitable power to deny the application for appointment of a receiver. Defendants repeatedly demonstrated their commitment to paying the Loan. This is not a situation of a borrower attempting to use a society-halting event to shirk its debt repayment responsibilities. Rather, this is a situation of Property owners struggling to satisfy their Loan obligations while maintaining their Property against the backdrop of a sharp and unanticipated economic downturn. Defendants paid the monthly payments until May, despite making little to no revenue. (Choi Aff. ¶¶ 40-41, 54, Exhs. 3, 8.) Thereafter, Defendants offered to make a lump sum payment to cover past-due payments and proposed initiatives to increase revenue and expand the business, among other

solutions to alleviate the burden imposed by the Pandemic. (*Id.*) The property is being properly maintained, which Plaintiff would have known had it actually visited and inspected the Property. (Choi Aff. ¶¶70-71; An Aff. ¶¶17, 19.) There appears little danger that in the absence of a receiver the premises will be injured or destroyed. *See Jerwin Realty Assocs.*, 1992 WL 390264 at *2–3.

Notwithstanding the existence of a provision in the mortgage agreement allowing for the appointment of a receiver, such appointment is not automatic absent a showing that this drastic remedy is essential to preserving Plaintiff's interests. Plaintiff has failed to demonstrate why it should be entitled to a receivership under the present circumstances. Accordingly, Plaintiff's Motion should be denied in its entirety. Consistent with the foregoing decisional authority, Plaintiff has not carried its burden of establishing that a receivership necessary and warranted in the present case. Instead, the appointment of a receiver may in fact cause irreparable injury to Plaintiff's interest in the property if the Property is turned over to management who is not familiar with operating a Hotel through a pandemic.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiff's application for the appointment of a receiver be denied.

Dated:  March 7, 2022
          New York, New York

                              KISHNER MILLER HIMES P.C.

                              By:  __/s/ Bryan W. Kishner_____

                                    Bryan W. Kishner