UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2019-C17, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2019-C17, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019,

Plaintiff,

v.

36th STREET PROPERTY INC.; HR 442 CORP.; AE SOOK CHOI; JIN SUP AN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEWBANK; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

Case No.: 1:22-cv-00302-LGS

**AFFIDAVIT OF AE SOOK CHOI IN OPPOSITION TO PLAINTIFF'S MOTION FOR THE APPOINTMENT OF PLAINTIFF'S RECEIVER**

---

AE SOOK CHOI, being duly sworn deposes and says:

1.     I am the President of both Defendant 36th STREET PROPERTY INC. and Defendant HR 442 CORP.  I am also one of the Guarantors on Loan No. 028002273, which is the subject of the instant Action. I make this affidavit on behalf of myself as well as Defendants 36th STREET PROPERTY INC, HR 442 CORP, and Jin Sup An (collectively, "Defendants"). I am fully familiar with all the facts and circumstances set forth herein based upon my own personal knowledge and a review of Defendants' books, records, and files.

## Introduction

### A. *The Hudson River Hotel is an ongoing successful business concern that has operated without incident until the worldwide Pandemic*

2.      This Affidavit is submitted in Opposition to Plaintiff's request for the drastic remedy of the Appointment of Plaintiff's unilaterally chosen receiver, *i.e.*, Janus Hotel Management Services, LLC ("Plaintiff's Motion").  Plaintiff's Motion requests that this Court allow Plaintiff's Chosen Receiver to take immediate possession of the real property and improvements located at 442 W. 36th St., New York, NY 10018 ("Premises" or "Property") in which is situated the Hudson River Hotel ("Hotel). The Hotel is an ongoing successful business concern owned and operated by the Defendants since its genesis at the end of 2016. The Hotel, like so many others in the hospitality industry, was harmed financially by the impact of the worldwide Pandemic.

### B. *Defendants Continuous Good Faith Communications and Negotiations with Plaintiff and Plaintiff's refusal to negotiate*

3.      Since the onset of the Pandemic, Defendants communicated with Plaintiff to ensure that Plaintiff knew the financial issues confronting the Hotel. Defendants went to great lengths to negotiate in good faith with Plaintiff to reach an equitable resolution. To date, Plaintiff has not negotiated in good faith, thereby preventing any type agreement to be reached between the parties. Plaintiff, who purchased the Mortgage and Loan (defined *infra*) at the commencement of the worldwide Pandemic in March 2020, seems more intent on trying to declare a default and accrue damages to recoup on what appears to be Plaintiff's poor timing of its financial investment rather than reaching a resolution with Defendants. It is my understanding that the Court directed the parties to attempt to negotiate in good faith.  I have been informed that Plaintiff refused to enter into any dialogue with my Attorney, demonstrating to this Court what we have been confronting throughout. For the reasons set forth herein, Plaintiff's Motion to appoint Plaintiff's Chosen Receiver should be

denied in its entirety, as the allegations of wrongdoing against the Defendants are false and not based upon any personal knowledge.

### *Plaintiff's reliance on the Callejas Affidavit – a nonparty without knowledge*

4.      Plaintiff does not submit its own Affidavit. Rather, the only affidavit submitted in support of Plaintiff's Motion is by the individual, Javier Callejas ("Callejas" or "Asset Manager"). Callejas purports to be Asset Manager of Plaintiff's Special Servicer, *i.e.*, Rialto Capital Advisors, LLC ("Rialto" or "Special Servicer"). Hence, Plaintiff does not submit its own party Affidavit and, rather, relies on the Affidavit of an individual who is not part of the actual facts that transpired between the parties. While Defendants constantly interacted with Rialto, Defendants have no recollection of ever interacting with Callejas. In fact, Callejas does not claim otherwise. *The Callejas affidavit is based upon hearsay and is not submitted with personal knowledge.* In fact, the Callejas affidavit is based on other third-party sources to summarily conclude that Defendants are committing waste and, per Callejas, Defendants have abandoned the Property and continue to refuse to "resume Hotel operations." Therefore, per Callejas, these actions call for the appointment of Plaintiff's Chosen Receiver.

5.      However, whatever third-party sources that Callejas relied on to formulate self-serving conclusions are incorrect. Despite the accusations by Callejas of waste and abandonment, the *Hotel is fully operational, up and running*, and has been since we first acquired the Premises back in 2016. In fact, we have successfully managed and operated the Hotel without interruption until the Pandemic. When the Pandemic hit, the Hotel, like many other hotels, temporarily shut down. *The Hotel paused operations on September 1, 2020. The Hotel resumed operations on December 18, 2021*. Hence, one must question whether Callejas spoke to anyone with knowledge prior to filing his affidavit with the Court on February 1, 2022. *Anyone visiting the Property or*

*performing an Internet search of the Property would readily determine that the Hotel is open for business.*

6.      A review of the Callejas affidavit indicates that same is based upon third-party sources and speculation. Hence, the Callejas affidavit is rife with words and phrases such as "seemingly" or "upon information and belief".

7.      It is respectfully submitted that Plaintiff's reliance on the Callejas affidavit as its sole source of factual information is misplaced and misguided as Callejas has misrepresented critical facts. The submission of the Callejas affidavit, a nonparty, as the sole basis of factual information should lead this Court to conclude either the weakness of Plaintiff's claims or, that said affidavit, should be totally disregarded. At a minimum, the dubious reliance by Plaintiff on Callejas should not support the imposition of such a harsh and drastic remedy as the appointment of a receiver.

8.      Callejas misrepresents that the Hotel has refused to resume operations. Rather, the Hotel is being successfully managed and operated by Defendants and Defendants are ensuring that there is no imminent danger to the Property nor the Hotel, which Plaintiff claims.

### *Brief Background of the Premises and Hotel*

9.      By way of brief background, Defendant 36th STREET PROPERTY INC., is the owner of the Premises.  When Defendant 36th STREET PROPERTY INC., acquired title to the Property on or about October 28, 2016, situated thereon was a differing hotel that Defendants believed to be of a lesser standard and quality than that which they wished to offer to the public.

10.     Defendants have a great amount of experience in hotel development and management dating back to 2005. Defendants have successfully developed and/or managed six (6) hotels, three of which were developed by Defendants, with all the hotels located in the New York City region. *See* annexed hereto as Exhibit 1 the *Hudson River Hotel Management Resume.*

11.     Defendants were confident through their collective knowledge and skill that they could establish a higher quality hotel. To this effect, Defendants dedicated a great deal of time, monies and energy in updating the former hotel to bring same to a higher character and quality. The fruits of Defendants' efforts resulted in what is currently situated on the Property today, *i.e.*, the Hudson River Hotel.  One may readily view the Hotel (or book a hotel room) by going online and visiting Defendants self-created website: https://hudsonriverhotel.com.   The Hotel presently consists of fifteen (15) stories and has fifty-six (56) rooms for lodging.

12.     Defendants have successfully operated the Hotel since the Hotel's grand opening in late 2016.  It is respectfully submitted, but for the hardships imposed upon us by the Pandemic the current situation never would have ever arisen.

### *History of Mortgage Transfers and Plaintiffs questionable Jurisdiction and Standing*

13.     Simultaneously with the acquisition of the Property, Defendants entered into an agreement inclusive of an Assumption of Mortgage Agreement (the "Mortgage") in which Defendants obtained a loan through YB/GMP Funding Trust in the principal amount of $12,805,184.00 (the "Loan").

14.     Thereafter, the Mortgage and Loan went through multiple transfers/assignments, by which Plaintiff purports to be the last assignee. All dealings and negotiations regarding the Mortgage and Loan were done in New York; we signed documents relating to the Mortgage and Loan in New York; all proceeds were disseminated in New York; monies required for repayment to the Plaintiff is required to occur in New York; Plaintiff requires the Defendants to comply with relevant New York State Law; the controlling documents at issue are governed under New York State Law; communications from Plaintiff to the Defendants regarding the Loan and Mortgage were directed to New York; the Mortgage and Loan are recorded in the New York County Clerk's Office

controlled by New York Law, etc. I have been advised that there was filed with this Hon. Court a certain Pre-Motion Letter to determine whether or not the Plaintiff has appropriate jurisdiction to be in this Court because of "diversity" jurisdiction.

15.   It should be further noted that I have been informed by counsel that a review of the records available from New York City Clerk's office places into question whether or not there has been successful assignments of the Mortgage and Loan without a break in the chain of ownership. An issue may arise as to whether Plaintiff has the necessary standing to have commenced this action. Further, reference is made to my Attorney's Affirmation, which sets forth the numerous transfers/assignments of the Mortgage and Loan. There has been a minimum of five (5) transfers of the Mortgage and Loan. Plaintiff purports to be the holder of the Mortgage and Loan by way of an assignment recorded in the New York City Clerk's office on March 2, 2020.

***Plaintiff's Bad Timing of Obtaining the Mortgage and Loan on March 2, 2020, at the onset of the Worldwide Pandemic***

16.   Plaintiff comes before this Hon. Court in a manner in which it acts as if there has been a long-standing relationship between Plaintiff and Defendants and that Defendants have ignored Plaintiff subsequent to the onset of the Pandemic. Quite to the contrary, as will be demonstrated immediately below, Defendants kept Plaintiff up to date subsequent to the onset of the Pandemic and made continual efforts to negotiate a good faith resolution with Plaintiff. To date, Plaintiff refuses to negotiate in good faith.

17.   In hindsight, Plaintiff, becoming the owner of the Mortgage and Loan in March 2020 (along with a slew of other mortgages and loans) was confronting themselves the financial impact of the Pandemic. However, Plaintiff's poor business timing in its acquisition of the Mortgage and Loan does not justify Plaintiff coming before this Hon. Court and making dramatic *misrepresentations* of Defendants' abandonment, waste and fraud, despite having no evidentiary

support to back it up.

18.     Plaintiff comes before this Hon. Court either ignoring the multitude of communications that were had between Plaintiff and Defendants subsequent to the Pandemic, or Plaintiff, via Callejas as its sole source of obtaining factual information, does not have actual knowledge of what truly occurred.

### ***Plaintiff's Seven Purported Justifications for the Appointment of Plaintiff's Chosen Receiver***

19.     The Callejas affidavit sets forth the following seven (7) reasons as to why Plaintiff believes that Plaintiff's Chosen Receiver should be appointed:

*1.  Failure to submit Monthly Debt Service payments;*

*2. Failure to provide financial documentation within 30 days subsequent to notice;*

*3. Failure to honor cash management obligations pursuant to the Loan and Mortgage; and*

*4. Defendant's failure to resume operations of the property in violation of the Loan and Mortgage.*

*5. Failure to maintain insurance;*

*6. A purported misrepresentation on a Loan Application because of a the cross collateralized of a loan for $1.1 million that was taken out from New Bank by the Defendants;*

*7.  Breach of the Loan and Mortgage because of the New Bank Loan;*

As will be detailed immediately below, the seven (7) justifications are either misrepresentations, submitted in bad faith, or submitted in error because of the lack of information of the actual events which transpired between the parties.

### ***Justification Number Five – Plaintiff's False Claim that the Hotel does not have Insurance***

20.     Plaintiff's allegation that there is no insurance covering the Premises is false. Annexed hereto as Exhibit 2 is a true and accurate copy of the Certificate of Liability Insurance dated February 16, 2022, for the Policy Period of September 1, 2021 through September 1, 2022, indicating that there is current insurance covering the Premises.

***Justification Number Four – Plaintiff's False Claim that the Hotel did not resume Operations***

21.     Plaintiff's claim that the Defendants did not resume operations of the Hotel is false. As previously noted, the Hotel temporarily closed in or around September 1, 2020. The Hotel resume operations on December 18, 2021.

22.     Plaintiff's Motion, filed on February 1, 2022, is a clear indication of Plaintiff's lack of diligence of having any individual of the Plaintiff personally view the Hotel or place a telephone call to the Hotel to book a room. Anyone from the public may have readily determined that the Hotel is fully operational.

23.     Defendants at no point in time ever abandoned the Hotel. The Hotel is a viable business concern being operated and managed by seasoned professionals and the appointment of Plaintiff's Chosen Receiver would only interfere with our business and do nothing to benefit Plaintiff. It would serve only to injure Defendants and same is not warranted.

***Justifications Number Six and Number Seven – Plaintiff's Claim that a Mortgage was taken out for 1.1 million without Plaintiff's Knowledge***

24.     On November 15, 2019, Defendants took out a certain commercial credit line of $1.1 million with Newbank in which Newbank cross-collateralized the Property by filing a Mortgage and recording same with the New York City Clerk's Office.

25.     Plaintiff took ownership of the Mortgage and Loan and recorded its assignment of same with the New York City Clerk's Office on March 2, 2020.

26.     Hence, when Plaintiff took ownership of the Mortgage and Loan, it knew of the existence of Newbank as Newbank had previously filed the Newbank Loan Mortgage with the New York City Clerk's Office.

27.     Plaintiff should not be able to come before this Hon. Court to use as the justification for the appointment of a receiver an issue of which Plaintiff was fully aware of when it acquired the

Mortgage and Loan.

28.    Plaintiff accepted the risk of the Newbank Mortgage when it accepted its assignment and ownership of the Mortgage and Loan on March 2, 2020.

### *Justifications One, Two and Three – Pandemic Related Temporary Closure and Hardships*

29.    From the seven (7) issues, three (3) deal with Defendants' purported failure to make monthly payments and/or otherwise fulfill other financial obligations pursuant to the Mortgage and Loan. Admittedly, during the Pandemic, the Hotel temporarily shut down. One may only hope that Plaintiff appreciates the horror that the Pandemic had upon almost all hospitality facilities, including the Hotel.  The Hotel, like so many other entities in the hospitality industry, was negatively impacted by the Pandemic along with the associated mandated governmental closures and prohibitions against assembly by the public.

### *Plaintiff's Refusal to Negotiate in Good Faith Even in the Context of this Action*

30.    Defendants have acted in good faith in the negotiation process, and Plaintiff has, in sum and substance, entered into this Hon. Court without a scintilla of good faith negotiations standing behind it. Rather, attempts by Defendants to negotiate in good faith with Plaintiff has fallen on deaf ears.

31.    It is respectfully submitted that Plaintiff should not be allowed to enter into this Hon. Court requesting the appointment of a Receiver when it is acting in bad faith in failing to negotiate at all with Defendants even in the context of this pending action.

32.    Even when directed by this Hon. Court to negotiate some type of resolution, Plaintiff refused. This behavior should not be tolerated.

### *Immediate Communications by Defendants to Plaintiff Subsequent to Onset of Pandemic*

33.    From the onset of the Pandemic, Defendants made a great deal of effort to

communicate with Plaintiff to keep Plaintiff fully abreast of the ongoing operations of the Hotel

and try to work in conjunction with Plaintiff to find a solution to the outstanding monies claimed to

be owed.  In March 2020, the Pandemic led to federal, local and state governments enacting various

laws resulting in the closure of non-essential businesses, banning international travel, and limiting

the number of individuals who can gather in a given space.

34.    The Hotel began to suffer a precipitous decrease in occupancy rates as a result of the

COVID-19 restrictions. As a lot of the Hotel's clientele are European travelers, and the United

States banned travel from European countries, the Hotel's typical flow of occupying guests

effectively vanished. [See Exhibit 3]. As of March 16, 2020, ninety percent (90%) of the Hotel's

reservations for March 2020 and future reservations were cancelled, and the Hotel had not received

any new reservations. [See Exhibit 3].

35.    Beginning in March 2020, and continuing through August 2020, Defendants

proactively and repeatedly reached out to Plaintiff, through its designated loan servicer, attempting

to negotiate a restructuring of the Loan or a revised payment plan to reflect the economic realities

of the Pandemic

**_Continual updates and communications between Defendants and Plaintiff and its representatives_**

36.    On March 16, 2020, Defendants emailed a representative of Wells Fargo

Commercial Mortgage Servicing, the Master Servicer for the Loan ("Wells Fargo"), communicating

the financial hardships the Hotel faced as a result of the Pandemic and requesting relief from making

timely payments on the Loan. See annexed hereto as Exhibit 3, pp. 1-3, a true and accurate copy of

the March 16, 2020 email exchange between Defendants and Wells Fargo.

37.    In response to Defendants' March 16, 2020 email, Wells Fargo responded on March

16, 2020 explaining that Wells Fargo, as the *Master Servicer* of the Loan, does not have the requisite

authority to provide immediate relief to the payment terms of the Loan, but advised that Wells Fargo was in contact with the Loan's special servicer to determine the best way to manage the financial impact of the Pandemic on the Loan. *See* Exhibit 3.

38.     Again, on April 8, 2020, Defendants issued a letter to Wells Fargo detailing the economic hardships the Hotel faced as result of the Pandemic. With this letter, Defendants requested a three-month forbearance of the Loan payment from April 2020 through June 2020. No response was ever provided to the Defendants.

39.     As Defendants were not getting any movement from Plaintiff, in or around April 2020, Defendants retained a *consultant* by the name of Rikki Greenwald of YK Group, LLC (the "Consultant") to negotiate a restructuring of the Loan and/or payment options.

40.     Defendants made the monthly payments on the Loan until May 2020.

41.     As of June 2020, the Hotel's occupancy rate stood at 0.52%, which stands in stark contrast to the 90.76% occupancy rate the Hotel experienced in June 2019.

42.     On June 4, 2020, Wells Fargo informed the Consultant that Wells Fargo sent Defendants' April 8, 2020 forbearance request to the Loan's special servicer, Rialto Capital Advisors, LLC, on April 8, 2020 but had not received a response from Rialto. See annexed hereto as Exhibit 3, pp. 4-9, a true and accurate copy of the June 4, 2020 email exchange between Wells Fargo and the Consultant.

43.     Although the Consultant repeatedly asked Wells Fargo to put them in contact with Rialto, they refused to do same, and the Consultant needed to still communicate with Wells Fargo regarding the Loan and payments, as Wells Fargo was unable to provide a point of contact for Rialto.

44.     On June 9, 2020, the Consultant sent an email to Wells Fargo requesting forbearance

on the monthly Loan payments for May 2020 through July 2020. See annexed hereto as Exhibit 3, pp. 10-14, a true and accurate copy of the email exchange between the Consultant and Wells Fargo dated June 9, 2020 – June 10, 2020.

45.     Wells Fargo responded to the Consultant's June 9, 2020 email on June 10, 2020, advising that a request for a three-month forbearance was previously sent to Rialto and stating, "*Not sure what else can be done at this point as Rialto hasn't responded*." *See* Exhibit 3, p. 10.

46.     On June 11, 2020, the Consultant sent an email to Wells Fargo requesting that Wells Fargo immediately transfer the Loan to Rialto "*so they can guide us from this point going forward with regards to what needs to be done.*" See annexed hereto as Exhibit 3, pp. 15-20, a true and accurate copy of the email exchange between the Consultant and Wells Fargo dated June 11, 2020 – June 15, 2020.

47.     Despite the Consultant's request that the Loan be transferred to Rialto immediately, the transfer was not effectuated until June 17, 2020, thus further delaying Defendants' ability to renegotiate the Loan and Loan payments with the proper party, Rialto. See annexed hereto as Exhibit 4 true and accurate copies of the June 17, 2020 letter from Wells Fargo confirming the Loan transfer, as well as the accompanying cover email dated June 18, 2020.

48.     On or about July 2, 2020, the Consultant informed Defendants that a representative from Rialto had been assigned to deal with Defendants' request for payment relief.

49.      In order to simply enter into discussions with Rialto regarding the Loan, Rialto provided Defendants with a multipage agreement twenty (20) differing terms to sign and return (the "Rialto Agreement"), as well as a list of ten (10) categories of documents to provide to Rialto prior to the parties entering into negotiations. See annexed hereto as Exhibit 5 true and accurate copies of a cover email from the Consultant to Defendants describing the agreement and attaching the list

of required documents, dated July 2, 2020, as well as the list of documents Rialto requested.

50.    On July 15, 2020, in accordance with the July 2, 2020 list, Defendants submitted to Rialto the requested documents in continuing good faith. Included among the documents provided to Rialto were corporate tax returns, the Guarantors' tax returns, an Operating Statement, an Occupancy Report, various financial statements, a Property organization chart, and a Management Resume (*see* Exhibit 1).

51.    Finally, on July 17, 2020, after Defendants provided to Rialto further voluminous requested documentation, Rialto executed and returned the Agreement.

52.    Notably, the Agreement expressly provides, *"[W]e want to confirm our mutual understanding that all past discussions and negotiations, as well as all subsequent discussions and negotiations, have been and will be undertaken with a view toward compromise and settlement*." (emphasis added.) See annexed hereto as Exhibit 6 true and accurate copies of the July 17, 2020 cover email from the Consultant to Defendants attaching the executed Agreement, as well as the fully executed Agreement.

53.    Notwithstanding the Agreement's statement that there would be a view toward compromise and settlement, Rialto essentially immediately issued a Notice of Event of Default and Demand for Payment to Defendants, dated July 20, 2020, in which it demanded payment of the past-due monthly payments for May 2020 through July 2020. See annexed hereto as Exhibit 7 a true and accurate copy of the July 20, 2020 Notice of Event of Default and Demand for Payment.

54.    On July 27, 2020, Defendants issued a letter to Rialto detailing the effects of the Pandemic on the Property and Defendants' efforts to abate the negative impacts and preserve the long-term viability of the Hotel and Plaintiff's investment. *In that letter, Defendants offered to pay a lump sum to cover some of the past-due payments on the Loan and requested a six (6) month*

*forbearance on the repayment for the months of October 2020 through March 2021.* Defendants also requested six (6) months to market potential option models as a means to protect the Hotel from further financial instability brought on by the Pandemic. See annexed hereto as Exhibit 8 a true and accurate copy of Defendants' July 27, 2020 letter.

55.     Defendants, because of the economic toll of the Pandemic coupled with various New York State Executive Law restrictions preventing the assembly of individuals were essentially compelled to temporarily close the Hotel on September 1, 2020 in order to preserve the long-term commercial health of the Property and abate further financial loss to the Hotel.

56.     *Rialto did not respond to Defendants' July 27, 2020 letter until September 10, 2020,* when, rather than providing some sort of good faith response to the offers of resolution, rather, continue to demand complete payoff by issuing a Payoff Demand Statement to Defendants, apparently disregarding the contents of Defendants' July 27, 2020 letter. See annexed hereto as Exhibit 9 a true and accurate copy of the Payoff Demand Statement dated September 10, 2020.

57.     As of September 23, 2020, Rialto would only accept a lump sum payment on the Loan and refused to negotiate in any good faith manner.

58.     On or about September 24, 2020, Defendants retained the law firm Morrison & Tannenbaum PLLC (herein, "Loan Counsel") to further assist with negotiating the Loan restructuring.

59.     Rialto was fully aware that the Hotel was closed as per the previous information Defendants provided to Rialto. Nevertheless, on or about September 28, 2020, Rialto unilaterally scheduled an inspection knowing the Hotel was closed.

60.     On September 30, 2020, Defendants' Loan Counsel issued a letter to Rialto seeking to further negotiate the Loan and requesting additional time to respond to Rialto's September 10,

2020 Payoff Demand Statement, as Loan Counsel had only recently been retained. See annexed hereto as Exhibit 10 true and accurate copies of the October 1, 2020 cover email from Loan Counsel to Rialto attaching the September 30, 2020 letter, as well as the September 30, 2020 letter.

61.    Notwithstanding Defendants' ongoing attempts to work with Rialto to develop a feasible Loan payment plan, Plaintiff, through its counsel at the law firm Thompson & Knight LLP, issued a Notice of Acceleration to Defendants on November 13, 2020 declaring the entire Loan immediately due and payable. See annexed hereto as Exhibit 11 a true and accurate copy of the November 13, 2020 Notice of Acceleration.

62.    Thereafter, Defendants did not hear from Rialto until June 3, 2021, when Plaintiff issued a Notice of Default and Demand for Financial Information, stating that Defendants were in default of their financial reporting obligations under the Loan, in addition to the payment default described in the July 20, 2020 Notice of Default (*see* Exhibit 7). See annexed hereto as Exhibit 12 a true and accurate copy of the June 3, 2021 Notice of Default and Demand for Financial Information.

63.    On the same day, June 3, 2021, Plaintiff issued a second letter to Defendants, this time providing Defendants with an opportunity to submit a Commercial Mortgagor's Declaration of COVID-19-Related Hardship ("Hardship Declaration") pursuant to the statewide moratorium on foreclosure proceedings. See annexed hereto as Exhibit 13 true and accurate copies of the June 3, 2021 Hardship Declaration letter and accompanying Hardship Declaration.

64.    Defendants executed and returned the Hardship Declaration to Plaintiff on or about June 7, 2021. See annexed hereto as Exhibit 14 a true and accurate copy of Defendants' June 7, 2021 Hardship Declaration.

65.    Purportedly, there was a communication issued by Plaintiff's counsel dated June 21,

2021 in which a certain attorney by the name of Marcos Coto-Batres, Esq. of the law firm Morrison & Tenenbaum PLLC was contacted to facilitate access to and an inspection of the Premises. Mr. Coto-Batres and the law firm Morrison & Tenenbaum PPLC do not currently represent Defendants.

### *Reopening of and Resumption of Operations at the Hotel*

66.    The Hotel reopened on December 18, 2021 and has since resumed regular operations.

67.    Defendants have continuously maintained Insurance on the Hotel since the commencement of business in or around October 2016 (*see* Exhibit 2).

68.    Defendants have and are currently successfully running the Hotel since its formation without interruption, with the exception of the Pandemic.

69.    There has been no dissipation of assets, waste and/or diminution in value being created by the conduct of the Defendants.

70.    I did not receive a phone call or a written or electronic communication from Plaintiff, Plaintiffs' counsel, or Plaintiffs' agents, representatives, or employees requesting access to the Property at any time since March 2020.

71.    At no time since March 2020 has an inspector hired by Plaintiff entered the Hotel to conduct an inspection. Defendants still welcome Plaintiff to inspect.

72.    As a result of the foregoing, the Defendants respectfully request that the Plaintiffs A motion to Appoint a Receiver should be summarily denièd and the Defendants awarded its costs and disbursements inhabited defend this frivolous filing.


Dated: New York, New York
          March 8, 2022

## VERIFICATION

STATE OF NEW YORK    )
                         ) ss:
COUNTY OF NEW YORK  )

AE SOOK CHOI, being duly sworn, deposes and says:

I am one of the Defendants in the within action, and I have read my Affidavit in Opposition to the Plaintiffs Order to Show Cause for the appointment of their unilaterally chosen Receiver which is annexed hereto and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
AE SOOK CHOI

Sworn to before me this
_7_ day of March, 2022

_____
Notary Public

NAM HYUN J
Notary Public, State of New York
No. 01NA6137301
Qualified in Queens County
Commission Expires November 21, 2025