UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILMINGTON TRUST, NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE
BENEFIT OF THE REGISTERED HOLDERS : 22 Civ. 302 (LGS)
OF UBS COMMERCIAL MORTGAGE TRUST
2019-C17, COMMERCIAL MORTGAGE PASS- : ORDER
THROUGH CERTIFICATES SERIES 2019-C17,
                                        Plaintiff,

            -against-

36TH STREET PROPERTY INC., et al.,
                                        Defendants.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

WHEREAS, Plaintiff Wilmington Trust, National Association, brings a series of claims related to Defendants 36th Street Property Inc. and HR 442 Corp (the "Borrowers") alleged default on a September 3, 2019, Mortgage Agreement and related Loan Agreement in the principal amount of $14,200,000;

WHEREAS, Plaintiff moves for appointment of a receiver to take immediate possession and control of the assets of Borrowers, including the real property located at 442 West 36th Street, New York, New York 10018 (the "Property"), during the pendency of this action;

WHEREAS, Plaintiff argues that appointment is appropriate because (i) Borrowers acknowledged Plaintiff's entitlement to apply for the appointment of a receiver and consented to such appointment in the Mortgage Agreement and (ii) equitable considerations support the appointment of a receiver;

**JURISDICTION**

WHEREAS, the Court has diversity jurisdiction over this matter. Borrowers challenge the existence of diversity jurisdiction in this matter arguing that there is no complete diversity in

this action by virtue of Plaintiff's business operations in New York, by virtue of the presence of the Special Servicer who filed the action in New York and because Plaintiff's affiliates are in New York. Borrowers' arguments are unavailing.

WHEREAS, the Plaintiff's citizenship, as a trustee, is determinative of the diversity jurisdiction issue. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980) (holding that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others"); *accord Wilmington Tr., N.A. v. 115 Owner LLC*, No. 20 Civ. 2157, 2021 WL 5086368, at *1 (S.D.N.Y. Nov. 2, 2021). Here, from the same publicly available materials on the SEC's website Borrowers' cite to contest diversity jurisdiction, there is a Pooling and Servicing Agreement ("PSA") providing that Plaintiff has the customary powers of a trustee such that it is the real party in interest. *See also Wilmington Tr., N.A.*, 2021 WL 5086368, at *1 (holding that Wilmington Trust is the real party to the controversy for diversity jurisdiction based on identical terms present in the PSA in this case).

WHEREAS, there is complete diversity. Plaintiff, a national banking association, is a citizen of Delaware because its main office is located there. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006) ("[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located."); *accord Wilmington Tr., N.A. v. Winta Asset Mgmt. LLC*, No. 20 Civ. 5309, 2021 WL 3005598, at *1 (S.D.N.Y. July 13, 2021). None of the Defendants are citizens of Delaware.

**LEGAL STANDARD**

WHEREAS, a federal court has the power to appoint a receiver in accordance "with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. "The appointment of

a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (internal quotation marks and alterations omitted); *accord FCS Advisors, LLC v. Theia Grp., Inc.*, No. 21 Civ. 6995, 2021 WL 5042719, at *1 (S.D.N.Y. Oct. 29, 2021). Where a mortgage agreement contains a provision that a plaintiff may apply for the appointment of a receiver and there are several events of default, such a "provision strongly supports the appointment of a receiver." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988); *accord FCS Advisors, LLC*, 2021 WL 5042719, at *1;

> WHEREAS, courts consider the following factors when assessing the need for a receivership:
>
> > [1] [f]raudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, [5] in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249-50 (S.D.N.Y. 2012); *accord Wilmington Tr., N.A. v. Winta Asset Mgmt. LLC*, No. 20 Civ. 5309, 2020 WL 5802365, at *1 (S.D.N.Y. Sept. 28, 2020). Fraudulent conduct is not a prerequisite to the appointment of a receiver. *Wilmington Tr., N.A.*, 2020 WL 5802365, at *1 (collecting cases).

WHEREAS, at least one court has persuasively reasoned that language in a mortgage agreement indicating a borrower's consent to the appointment of a receiver in the event of a default is sufficient to support the appointment of a receiver following a default. *CCRF 2007-MF1 East 53 Complex, LLC v. East 53 BSD LLC*, No. 19 Civ. 2553, 2020 U.S. Dist. LEXIS 241123, at *39-41 (E.D.N.Y. Dec. 18, 2020) ("Considering the specific language in the loan agreements, in which the borrower authorized the appointment of a receiver in the event of a

default, the Court finds the arguments raised by defendants as to the factors relevant to a determination of the equitable remedy of a receivership to be inapplicable in this case where there is an explicit contractual provision authorizing the appointment of a receiver upon a default."), *R. & R. adopted by* Order dated January 12, 2021.

**DISCUSSION**

WHEREAS, Section 1.2 of the Mortgage Agreement includes an assignment of all Rents related to the Property to Plaintiff. The Mortgage Agreement defines rents broadly to include, inter alia, hotel receipts, receipts from guest rooms and meeting rooms, food and beverage sales and vending machine sales. The assignment is memorialized in a separate Assignment of Leases and Rents dated September 3, 2019 (the "ALR"). The Mortgage Agreement grants Borrowers a revocable license to collect, receive and use the Rents to discharge sums due for operating expenses of the Property and to make payments on the Loan. The Mortgage Agreement provides that upon the occurrence and during the continuance of any Event of Default, the license to collect and use the Rents is automatically revoked and Plaintiff "may enter into or upon the Property . . . and dispossess Borrower[s] . . . therefrom" and that "Borrower[s] agree[] to surrender possession of the Property and of such books, records and accounts to Lender upon demand." The Mortgage Agreement further provides that upon any the occurrence and during the continuance of any Event of Default, Plaintiff may "apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, which appointment is hereby authorized and consented to by Borrower." The ALR also provides that Plaintiff may "by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of the property and all books, records and accounts relating

4

thereto and have, hold, manage, lease and operate the Property."

WHEREAS, Plaintiff alleges seven events of default: (1) payment default, (2) fraud default, (3) covenant default, (4) insurance default, (5) financial reporting default, (6) cash management default and (7) cessation of operations default. The Loan Agreement defines Event of Default broadly to include, inter alia, "if any monthly installment of principal and/or interest . . . is not paid when due[,]" "if the [required insurance] Policies are not . . . kept in full force and effect," "if any representation or warranty made by Borrower . . . shall have been false or misleading" when made, "if Borrower ceases to continuously operate the Property" other than in connection with a repair or renovation approved by the lender.

WHEREAS, Borrowers do not contest that the payment default, cash management default, financial reporting default and cessation of operations default occurred. Borrowers instead argue that those defaults were caused by the COVID-19 pandemic. While the Court is sympathetic to Borrowers given the toll of the pandemic, the argument does not provide a basis for excusing the default nor does it explain why Borrowers failed, at the minimum, to meet their financial reporting obligations. Further of note is that Borrowers do not identify any provision of the Mortgage Agreement or Loan Agreement providing any basis to advance a force majeure argument or excuse the defaults.

WHEREAS, Borrowers' argument against the covenant default is unpersuasive. Borrowers covenanted and agreed that no indebtedness other than the Loan may be secured by the Property. Borrowers do not contest that just over two months after entering the Mortgage and Loan agreements they took out a commercial credit line which was secured by a mortgage on the Property.

WHEREAS, Borrowers contest the fraud default and insurance default. The Court does

not rely on these alleged instances of default for the appointment of a receiver because the other five instances of default warrant the appointment.  As to the fraud default, it is unclear that the representations alleged to be fraudulent were false when made because the second mortgage was dated after the Mortgage Agreement although the underlying loan related to the second mortgage predates the Mortgage Agreement.  As to the insurance default, Borrowers submit evidence that they have insurance currently, but do not submit evidence substantiating their claim that they maintained insurance prior to September 2021.

WHEREAS, in light of Borrowers' explicit consent to the appointment of a receiver in the event of a default and Borrowers' no fewer than five events of default, the appointment of a receiver is warranted.

WHEREAS, even in the absence of Borrowers' consent, Plaintiff has shown its entitlement to the appointment of a receiver under the five factors considered by courts.  First, while there is no clear fraudulent conduct on the part of Borrowers, Plaintiff has established that Borrowers, independent of the pandemic, violated the covenants of the Loan Agreement by seeking an additional mortgage just two months after covenanting not to.  Additionally, it is undisputed that Borrowers failed to meet their financial reporting obligations, which prevents Plaintiff from identifying any case of fraud or mismanagement that may have transpired.  Second, there is imminent risk of Plaintiff's property, both the Rents and the Property, being concealed and diminished in value because Borrowers have not remitted rents, as they are required to do, and Plaintiff, in the absence of financial reporting, has no basis to believe that Borrowers can afford to maintain the property, particularly given Borrowers' refusal to provide Plaintiff with access to the Property.  Third, Plaintiff's other legal remedies are inadequate to protect its interests because Borrowers fail to identify an alternative legal remedy that could be adequate.

Fourth, given Borrowers' disregard for their obligations under the Mortgage and Loan Agreements, including by seeking a second loan and by failing to meet their financial reporting obligations, it is likely that denying the appointment would result in greater harm to Plaintiff than injury to the Borrowers.  Borrowers argue that they, as current management, are more likely to manage the premises efficiently than a third-party receiver.  However, given the proposed receiver's extensive experience managing and operating a variety of hotels and resorts, the Court has no reason to doubt the receiver's ability to manage the premises.  Fifth, Plaintiff's probability of success in this action is high, and there is some risk of irreparable injury if either (1) the property's value is diminished and the Borrowers lack the resources to compensate Plaintiff or (2) if the hotel falls into disrepair and its reputation among prospective guests is impaired.  It is hereby

**ORDERED** that Plaintiff's motion to appoint Janus Hotel Management Services, LLC, as receiver to take immediate possession and control over the assets of Borrowers, including certain real property and improvements located at 442 West 36th Street, New York, New York 10018 and improved by the Hudson River Hotel is GRANTED.  For the avoidance of doubt, this Order is limited to those assets permitted to be subject to a receivership under the Mortgage and Loan Agreements.  Plaintiff's proposed order for the appointment of a receiver will issue separately with modifications.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 20.

Dated: March 10, 2022
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**