UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF UBS COMMERCIAL MORTGAGE TRUST 2019-C17, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2019-C17, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019,<br><br>                  Plaintiff,<br><br>    v.<br><br>36th STREET PROPERTY INC.; HR 442 CORP.; AE SOOK CHOI; JIN SUP AN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEWBANK; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                  Defendants. | Civil Action File No. 22-cv-00302-LGS |

## ORDER APPOINTING RECEIVER

THIS MATTER is before the Court on the application of plaintiff plaintiff Wilmington Trust, National Association, As Trustee For The Benefit of the Registered Holders of UBS Commercial Mortgage Trust 2019-C17, Commercial Mortgage Pass-Through Certificates Series 2019-C17 ("*Plaintiff*"), acting by and through its special servicer, Rialto Capital Advisors, LLC ("*Special Servicer*"), as Special Servicer under the Pooling and Servicing Agreement dated as of October 1, 2019, for the immediate appointment of a receiver and

injunctive relief (the "***Motion***").  Upon review of the Motion and the Complaint filed herein (the "***Complaint***"), for good cause shown, the Court FINDS as follows:

1.      That this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332;

2.      That Plaintiff's Complaint against, <u>inter</u> <u>alia</u>, defendant 36th Street Property Inc. and HR 442 Corp. (collectively, "***Borrowers***") demonstrates grounds for the appointment of a receiver of the Borrowers' Assets (as defined below) pertaining to certain real property and improvements located at the real property commonly known as Hudson River Hotel at 442 West 36th Street, New York, New York 10018, identifiable as Block 733, Lot 60, and more particularly described in **<u>Exhibit 1</u>** annexed hereto (the "***Property***"), and that immediate and irreparable injury may result in the event a receiver is not appointed; and

3.      Borrowers are in default of their obligations under the Loan (as defined herein) as a result of, <u>inter</u> <u>alia</u>, their continued failure to remit the Monthly Debt Service Payments on the May 2020 Monthly Payment Date and each Monthly Payment Date occurring monthly thereafter.

Based on the foregoing FINDINGS as further articulated in a separate Order, the Court therefore grants the relief requested by the Motion.

**IT IS HEREBY ORDERED** that that Janus Hotel Management Services, LLC ("***Receiver***"), maintaining an office at 2300 NW Corporate Boulevard, Suite 232, Boca Raton, Florida 33431, be and hereby is appointed as the receiver of Borrowers' Assets (as defined herein).

**IT IS FURTHER ORDERED** that:

1.      Receiver be and hereby is appointed, with the usual powers and directions, temporary receiver for the benefit of all the rents and profits now due and unpaid or to become

due during the pendency of this action and issuing out of the Property mentioned in the Complaint and as more particularly described on **Exhibit 1** hereto;

        2.      The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the Property, together with the following (collectively, the "***Borrowers' Assets***"):

        All documents, ledgers, journals, reports, instruments, agreements, security and access codes, combinations, merchant credit card machines and access numbers to them, current lists of the tenants (if any), tenant ledgers, tenant files, tenant histories, records pertaining to occupancy, (including, without limitation, all guest/occupant ledgers, reservation reports, credit card billings, occupancy tax records, and all property tax or occupancy tax identification numbers, and cash receipts journals, guest/transient bookings, banquet/facility bookings, information, and materials in Borrowers' or their respective agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, marketing, financing, use, operation, preservation and protection of the Property, but excluding communications protected by the attorney-client privilege or work product doctrine (collectively, the "***Project Records***").  To the extent that Borrowers claim any Project Records, or portion thereof, are protected by privilege, a privilege log shall be produced to Plaintiff setting forth the grounds for the privilege asserted and/or claimed and an identification of the document, or portion thereof, that is being withheld such that the identification itself does not disclose the privileged information;

        All checking, savings, depository, payroll, vendor, petty cash, reserve, or other accounts relating to the Property and held by or for the benefit of Borrowers, including, without limitation, accounts maintained for operating expenses, credit card transactions,

reservation deposits, capital reserves, and any accounts utilized by hotel personnel, including desk clerks and bartenders, whether in the names of the Borrowers, any management company or other entity (collectively, the "***Project Accounts***);

All payments, revenues, refunds, proceeds from credit card transactions not settled into an account as of the date of this Order, and other income from, relating to or derived from the Property (collectively, the "***Project Income***");

All security, utility, prepayments and other deposits received by Borrowers and/or their respective agents and any deposits made by Borrowers to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Property (collectively, the "***Project Deposits***");

All information systems and technology of any kind, including access thereto, that Borrowers and/or their respective agents maintain or utilize for the benefit of Borrowers and/or relating to the Property, including but not limited to, phone numbers, user names, user identifications, passwords, social media accounts, including Facebook accounts, Twitter accounts, and Instagram accounts, any information contained on computers and any and all software and website(s) (including domain names and the operation of any telephone or internet reservation systems ) (collectively, the "***Information Technology***"); and

The originals of all leases, subleases, instruments, agreements related to rights of occupancy or use, licenses (including, without limitation, all liquor licenses, if permitted by law), franchise agreements, collective bargaining agreements, vehicle titles, and any other agreements in Borrowers' or their respective agents' possession or control relating to the use or occupancy of the Property (collectively, the "***Leases***");

3.      The Receiver is empowered to continue the management, operation, maintenance and improvement of the Property as set forth herein and shall exercise all powers necessary to facilitate the operation of the Property;

4.      Borrowers, their agents, employees, members, managers, officers and representatives, including, but not limited to, defendants Ae Sook Choi and Jin Sup An (collectively, "**_Guarantors_**"), and any and all other contractors, persons and entities retained, hired or engaged by Borrowers (collectively, the "**_Borrower Parties_**") are hereby ordered to immediately identify any and all Project Accounts and surrender possession to the Receiver and control of Borrowers' Assets, including, without limitation, the Property, in their possession or subject to their control.  The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage the Borrowers' Assets, including, without limitation, the Property, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts;

5.      Borrower Parties and all persons acting under their direction are ordered to cooperate with Receiver and to deliver possession to Receiver, without any right of offset or recoupment, of the Borrowers' Assets, including, without limitation, the Property;

6.      All funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the Loan pursuant to the terms of the Loan Documents and, subject to this Order, shall be paid to Plaintiff upon the termination of the receivership created by this Order if and to the extent all debt and other amounts outstanding under the Loan Documents have not been repaid in full;

7.      The Receiver is authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and any such financial institution and any other persons in active concert or participation with Borrowers are hereby authorized to take such steps as is necessary to restrain or prevent Borrowers from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Project Accounts and are authorized to immediately turn over all funds in the Project Accounts to the Receiver.  Any financial institution maintaining Project Accounts is authorized to provide to the Receiver a complete listing of account numbers under Borrowers' names, including accounts previously closed.  For each such Project Account the financial institution is authorized to provide the current balance for such account and upon request by the Receiver is authorized to provide monthly bank statements (and details of any such transactions as requested) for a period of up to one year prior to entry of this Order;

8.      Borrower Parties are hereby directed to render to the Receiver and Plaintiff within ten (10) business days after the date of this Order (a) an accounting of all Project Income, all Project Expenses, whether paid with Project Income or by Borrowers for the benefit of the Property, all Project Accounts and all Project Deposits for the period beginning from and after January 1, 2020 to the date of this Order; and (b) an itemization of all unpaid bills and other amounts due and payable relating to the Property, together with all bills, invoices and other writings evidencing or relating thereto;

9.      All persons now or hereafter in possession of the Property, or any part thereof; and not holding such possession under valid and existing leases or tenancies, do forthwith surrender such possession to the Receiver, subject to emergency rent laws, if any;

10.     The Receiver is authorized and directed to demand, collect and receive from all tenants, guests, lessees, subtenants, sublessees, licensees, occupants or other users of all or any part of any Property (collectively, "*Tenants*") under current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.  All Tenants are authorized to pay the Receiver all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder;

11.     All Tenants, occupants, employees and licensees of the Property and other persons liable for the rents be and are hereby enjoined and restrained from paying any rent or license fees or other charges for the Property to Borrowers, their agents, servants or attorneys;

12.     Borrowers and Borrower Parties are (i) enjoined from in any way disturbing the possession of the Borrowers' Assets or other property subject to this Order, (ii) prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Borrowers' Assets or other property subject to this Order, (iii) enjoined from transferring, removing or in any way disturbing any of the occupants or employees, (iv) prohibited from committing or permitting any Waste (as that terms is defined in the Loan Agreement) on the Property, or taking any actions that might invalidate any insurance carried on the Property, and (v) prohibited and restrained from collecting any Project Income and/or Project Deposits (any and all of which shall be paid to Receiver);

13.     The Receiver be and is hereby authorized from time to time to rent or lease space and facilities for terms not exceeding one (1) year or such longer terms as may be required by the laws of the City and/or State of New York; to pay the taxes, assessments, water rates, sewer rents, vault rents, Property employee payroll and benefits, supplies and other

charges, subject to availability of funds; and to comply with all lawful requirements of any local, state or federal agency, department or authority having jurisdiction over the Property; provided, however, that the Receiver shall not be required to pay and shall not incur obligations in excess of the monies in its possession except upon Order of the Court or written consent of Plaintiff;

14.     The Receiver be and is hereby authorized and directed to: (i) keep the Property insured against loss by damage or fire; and (ii) procure such fire, plate glass, liability and other insurance as may be reasonably necessary in accordance with the terms set forth in Section 24 of this Order;

15.     The Receiver is authorized and directed (a) to deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order in its own name as the Receiver in an account insured by the *Federal Deposit Insurance Corporation* of a nationally or state chartered bank and such account shall show the name of this action and the Receiver shall not be permitted to make withdrawals therefrom except as directed by the Court herein or on a check signed by the Receiver; and (b) to send, on a monthly basis, a copy of the monthly statements of deposits and withdrawals for said account to Plaintiff and Plaintiff's counsel, Holland & Knight LLP, 900 Third Avenue, 20th, New York, New York 10022 to the attention of Keith M. Brandofino, Esq., keith.brandofino@hklaw.com;

16.     Notwithstanding anything set forth in the Loan Documents to the contrary, the Receiver is authorized and directed to use the Project Income and all other funds and monies coming into the Receiver's hands pursuant to this Order (including disbursements of funds to Receiver but excluding Project Deposits) to pay itself for its due diligence and transition costs and expenses related to the Receivership Estate, (subject to Plaintiff's approval of Receiver's

budget for such costs and expense) which shall be capped at $5,000.00, and subject to paragraph 32 hereof, to pay amounts as follows:

First, to the Receiver toward payment of the Receiver's fees and reimbursable cost and expenses pursuant to the schedule of fees attached hereto as **Exhibit 2**, which shall be payable on a monthly basis and prorated for the first and last month of the receivership term, whether the Property is open and operating or closed ("***Receiver's Fee***");

Second, to the payment of all monthly costs, expenses, payments and other monetary obligations and liabilities, specifically including, without limitation, employee payroll and benefits, all real and personal property taxes and assessments and all insurance premiums relating to the Property (collectively, "***Project Expenses***" and each a ***"Projected Expense"***) arising from and after the date of this Order reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect the Borrowers' Assets in accordance with this Order, provided, however, that while neither the Receiver nor Plaintiff shall have any liability or obligation to any other party to pay any Project Expense which was incurred or became due and payable prior to the date of this Order, the Receiver may pay Project Expenses arising prior to the date of this Order if and only if the Receiver reasonably determines that payment of such Project Expense is necessary for the continued ownership, operation, use, preservation and/or protection of the Property in accordance with this Order and Plaintiff, in the exercise of its sole discretion, consents in writing to the Receiver utilizing Project Income to pay such Project Expense and provided further, however, that the Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff or further authorization by this Court, except where exigent circumstances warrant such single repair, replacement or capital improvement to be made so as to protect the Property and/or safety

of guests or employees, and provided further, however, that the Receiver may, upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

Last, all remaining Project Income, funds and monies (collectively, "*Excess Funds*") to Plaintiff for application against the outstanding principal, interest and other amounts owed by Borrowers under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner as is authorized under the Loan Documents;

17.     If the Receiver determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit, whereupon Plaintiff shall have the right, but not the obligation, to advance to the Receiver funds to pay all or any portion of such deficit (*"Deficit"*) and any such funds advanced by Plaintiff (i) shall be repaid as an expense of the Receiver in accordance with this Order and (ii) to the extent not so repaid, shall be deemed an advance to Borrowers under the Loan Documents for the protection and preservation of the Property, shall be added to the outstanding principal amount of the Loan and shall be secured by the security title, security interest, lien and encumbrance of the Loan Documents (including, without limitation, any and all deeds of trust, mortgages, security agreements and assignments of leases and rents executed by Borrowers in connection with the Loan).  Nothing contained in this Order shall be construed as obligating or requiring the Receiver to advance its own funds to pay any costs and expense of the receivership or the Property.  To the extent there are insufficient funds for Receiver to meet its

obligations hereunder, then the Receiver may file an emergency motion with this Court for the appropriate relief;

18.     Plaintiff agrees that the appointment of the Receiver for the Property and any actions or failures to act of the Receiver or any agent of the Receiver (including, without limitation, any property manager) with respect to the Property, including, without limitation, failure to pay any amount due after the date hereof or perform any obligation related to the ownership or operation of the Property, shall not be a basis for any claim under the Loan against either Borrowers and Guarantors, including, without limitation, with respect to any Guaranteed Obligations, as defined in the Loan Documents. For the avoidance of doubt, Borrowers and Guarantors shall remain liable for their acts or omission under the Loan Documents to the extent provided in the Loan Documents;

19.     The Receiver, subject to availability of funds, is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary (a) for the proper management, operation, preservation and protection of the Property and the other Borrowers' Assets or to gain or recover possession of all or any part thereof; (b) for collection of any Project Income now due or hereafter to become due or fixed; and (c) for the removal of any Tenant or other person unlawfully possessing, occupying or using any part of the Property;

20.     On or before the twentieth (20th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to the Plaintiff, Borrowers and the Court concerning the operations, income and expenses of the Property, including, without limitation, trial balance and other reasonably requested information for tax or accounting purposes;

21.     Receiver shall serve at the pleasure of the Court and shall be paid the Receiver's Fee on a monthly basis in connection with its duties as receiver. The Receiver's Fee shall be payable out of revenues generated from the operations of the Property or, if such funds are insufficient, then shall be paid by Plaintiff directly to Receiver;

22.     Receiver shall maintain errors and omissions insurance coverage of not less than $1,000,000.00 during the term of the receivership created by this Order;

23.     Notwithstanding any other provision of this Order to the contrary, the Receiver shall not appoint an agent, appraiser, auctioneer or accountant, landlord-tenant counsel or any other secondary appointments without prior authorization of the Court or approval of the Plaintiff;

24.     Within ten (10) business days after the date of this Order, and subject to the availability of funds, the Receiver is authorized and directed to procure, have in place and maintain in full force and effect, and to pay the premiums for, insurance policies relating to the Property with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents. Plaintiff, franchisor, Receiver and other parties required in this Order or any franchise agreement, the Loan Documents or similar type agreements in place with respect to the Property shall be included as additional insureds on all such insurance, including, without limitation, the general liability, liquor liability, automobile liability and umbrella liability policies to the extent required in such agreements. Each such insurance policy obtained by the Receiver shall name the Receiver, Borrowers and Plaintiff as named insureds and Plaintiff as loss payee under the property insurance. Borrowers and their agents shall deliver copies of the existing insurance policies to the Receiver and are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property

that are in effect as of the date of this Order without the written consent of Receiver and upon Receiver's written notification that it has obtained insurance for the Property in accordance with this Order.  Receiver shall cause any replacement insurance to name Borrowers as a named insured under any replacement policy.  Any refunds of pre-paid insurance premiums received by Borrowers or their agents upon the cancellation of their insurance coverage for the Property is Project Income that shall be immediately remitted by Borrowers to the Receiver;

25.     Borrowers shall provide their tax identification numbers, credit card machines, merchant service or other credit card processing numbers, and any other information requested by the Receiver in order to carry out the Receiver's duties under this Order;

26.     The Receiver is authorized to, in accordance with and subject to applicable law, (a) continue to utilize Borrowers' or their affiliates' liquor licenses attributable to the Property and/or (b) transfer such liquor licenses into the Receiver's or the manager's name;

27.     The Receiver is authorized to operate under all existing agreements, permits, approvals and licenses between Borrowers, their property manager and all regulatory authorities with jurisdiction over the Property, to the extent permitted thereunder, and to take all steps necessary to comply with all requirements, regulations and laws, including but not limited to environmental or health requirements, liquor and other licenses under which Borrowers have operated at the Property, regulations and laws, applicable to the Property, and to deal with all regulatory authorities in connection with the same;

28.     The Receiver is authorized to pay, subject to the availability of funds, all current and past due real estate taxes, personal property taxes, and any other taxes and assessments against the Property; provided that Receiver may pay real estate taxes, personal property taxes, and any other taxes or assessment that is past due as of the date of its

appointment in its sole discretion. Any past due real estate taxes, personal property taxes and any other taxes and assessments for the Property or its operation shall not be an obligation of the Receiver;

29.     The Receiver is authorized to prepare and file sales, beverage, and occupancy tax returns with respect to the Property, as may be required by law and shall provide copies of each of the foregoing to Borrowers simultaneously with the filing thereof; provided, however, Receiver is not responsible for the preparation or filing of income tax returns for Borrowers or any of their affiliates or to pay any such taxes for Borrowers or any of their affiliates. Borrowers shall provide Receiver with their federal employment identification numbers for the Receiver's use on a limited basis as necessary;

30.     Notwithstanding any other provision hereof, the Receiver shall be under no obligation to complete or file tax returns on behalf of Borrowers for income or other taxes arising before the date of this Order.  Receiver and the receivership estate shall not be liable for the payment of taxes of any kind, assessments, goods or services provided to Borrowers for the Property prior to the date of this Order;

31.     The Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Borrowers' Assets, including the Property, and otherwise to carry out the Receiver's obligations under this Order;

32.     The Receiver may procure or maintain utility services for the Property. Regardless of their internal policies, no utility provider currently providing gas/steam, electric, water, sewer, trash, phone, cable, internet, or other utility services to the Property shall be

permitted to terminate such service or refuse to authorize any new account based upon unpaid bills for services rendered prior to the appointment of the Receiver or during the term of the Receiver, and further than added that by the terms of this Order, any utility service provider to the Property is commanded to open an account without any deposit in the Receiver's name, but using the Borrower's account information and that the Receiver is not responsible for any utility bills accruing prior to its appointment as Receiver;

33.     No person or entity, including governmental entity, shall file suit against Receiver, or take other action against Receiver, regarding anything related to the Property or Receiver's action or inaction as Receiver, without an order of the Court permitting the suit or action; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of the Court in this action;

34.     Receiver and its directors, officers, affiliates, employees, agents, representatives and attorneys, shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Order;

35.     The liability of the Receiver is and shall be limited to the assets of the receivership estate, and the Receiver shall not be personally liable for any actions or failure to act taken pursuant to this Order except as set forth above;

36.     Except as otherwise provide in this Order, the Receiver shall have the right to make an application to this Court to resign its position at any time upon thirty (30) days prior written notice to Plaintiff;

37.     In holding, retaining, managing, operating, preserving and protecting the Borrowers' Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Property and the other Borrowers' Assets.  ~~As of the date of this Order, Borrowers shall or shall cause its property manager to terminate any and all employees at the Property and such termination shall be in compliance with any applicable federal, state or local statutes and regulations including those governing mass layoffs.~~

38.     Receiver may offer employment to existing employees working at the Property of Borrowers or related parties (including any management companies engaged by Defendants) to continue any business operations, or in the alternative hire all employees as those of any management company or other entity hired by Receiver. Borrowers or any management companies engaged by Borrowers (as appropriate) will be solely and exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Borrowers or any management companies engaged by Borrowers, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (ii) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Restraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.,* and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations. Receiver and property management companies it engages shall be solely and exclusively responsible for any of the

items identified in the preceding sentence that arise during the tenure of Receiver. All pre-receivership liabilities for which Borrowers and/or any management companies engaged by Borrowers bear responsibility will not be carried and reported as those of the receivership estate.

39.     As an out of pocket reimbursable expense, the Receiver is required to obtain a receiver's bond in the amount of $50,000.00 and submit proof of such receiver's bond to the Clerk of this Court in the amount of $50,000.00 or deposit cash or certified check payable to the Clerk of this Court in that amount with the Clerk of this Court, within ten (10) business days of this Order.  Upon the Receiver's submission of proof of such bond, the Receiver shall be authorized and empowered to perform its duties under this order, including taking control of Borrowers' Assets;

40.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the customary powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Property and the other Borrowers' Assets and otherwise to comply with the terms of this Order;

41.     The Receiver, or any party hereto, may at any time on proper notice to Borrowers and all parties who may have appeared in this action, apply to this Court for further or other instructions or authority necessary to enable the Receiver to properly fulfill its duties;

42.     This Court expressly retains continuing jurisdiction over this receivership until such time that the Receiver renders a final accounting upon the submission of which an order discharging the Receiver shall be issued forthwith;

43.     The Receiver and any party that has appeared in this action may, at any time, upon notice to all parties who have appeared in this action, apply to this Court for further

and other instruction and for further power necessary to enable to the Receiver to properly fulfill its powers and duties;

44. Borrowers and Borrower Parties and all persons and entities acting in concert with any of them are hereby **ENJOINED** from: (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Receiver's exercise of its powers and performance of its duties pursuant to this Order; (c) removing, destroying, concealing, altering, disabling, shutting down or otherwise making ineffective any of the Borrowers' Assets, specifically including, without limitation, the Project Records and the Information Technology; and (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing, sale or operation of the Property and the other Borrowers' Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver;

45. Borrowers shall or shall cause their property manager, as allowed by applicable law, to turnover to Receiver any payroll records, employee files, credit/background checks, applications and other materials relevant to those persons employed by or at the Property, including, to the extent other employee information turnover is not allowed, at a minimum, a list of employees of Borrowers or their property manager showing the names of employees, positions held and current compensation and benefit terms.

46. Receiver shall have no liability to any party for any claims, actions or causes of action arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver.  This protection of the Receiver from liability shall include, but not be limited to, any liability from the performance of services rendered by third parties on behalf of Borrowers, and any liability to which Borrowers are currently or may ultimately be exposed under any applicable laws pertaining to the ownership and operation of the Property;

47.     Following the Receiver's appointment, neither the Receiver nor Plaintiff shall be deemed in any way to be an owner of the Property;

48.     Upon the termination of the receivership, Receiver shall deliver to Plaintiff or its designee all Project Records (but excluding the personnel files of the Property employees), Information Technology and such books and records that should come into the Receiver's possession under this order.

Dated:  March 10, 2022
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

#153872305_v1 527548.00038

## EXHIBIT 1
### (Description of Property)

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF NEW YORK, CITY AND STATE OF NEW YORK, KNOWN AND DISTINGUISHED ON A MAP ENTITLED "MAP SHOWING THE SITUATION OF 144 LOTS OF LAND BEING A PART OF GLASS HOUSE FARM, THE PROPERTY OF GEORGE RAPELLE, ESQ., DRAWN BY ADOLPHUS LOSS C.S." BY THE NO. 138, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WEST 36TH STREET, DISTANT 250 FEET EASTERLY FROM THE SOUTHEASTERLY CORNER OF 36TH STREET AND 10TH AVENUE;

RUNNING THENCE SOUTHERLY PARALLEL WITH 10TH AVENUE, 98 FEET 9 INCHES;

THENCE EASTERLY PARALLEL WITH WEST 36TH STREET, 25 FEET;

THENCE NORTHERLY PARALLEL WITH 10TH AVENUE, 98 FEET 9 INCHES TO THE SOUTHERLY SIDE OF 36TH STREET;

THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF WEST 36TH STREET, 25 FEET TO THE POINT OR PLACE OF BEGINNING.

For information only:  Designated as Block 733, Lot 60, New York County, and also known as 442 West 36th Street, New York, New York

527548.000042 24527072.7

**EXHIBIT 2**
**(Receiver's Fee)**

<u>Management Fee:</u>  The greater of 3% of gross revenues or $4,500.00 monthly.

<u>Accounting Fee:</u>  $750.00 (including payroll processing).

Travel expenses of the manager's corporate staff will be billed to the property at cost.

If the Property is sold to a third-party during the receivership, the Receiver shall be entitled to a close-out fee in the amount of one month's management and accounting fee due for the final accounting requirement and the transition of the Property to new ownership.